IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELISEO RIVERA CORTES, et al.,

    Plaintiffs,

        v.           CIVIL NO. 98-2092 (JAG)

AIRPORT CATERING SERVICES CORP., et al.,

    Defendants.

## REPORT AND RECOMMENDATION

### INTRODUCTION

On January 28, 2000, co-defendant Airport Catering Services, Corp. ("ACS") filed a Motion for Summary Judgment (Docket No. 35) which was opposed by plaintiffs (Docket No. 44). On November 3, 2004, these motions were referred to the undersigned Magistrate Judge for report and recommendation (Docket No. 99). On November 8, 2004, the parties were granted twenty (20) days to submit any translated portions in the English language of any relevant parts or attachments to their motions (Docket No. 100). On December 3, 2004 and through the months of January and February 2005, ACS submitted the translations of documents to be considered in support of its summary judgment request, as ordered by this Magistrate Judge (Docket Nos. 100, 102, 105, 107, 108, 110).

### BACKGROUND

The procedural history of this action originated before the Labor Relations Board of the Commonwealth of Puerto Rico. Plaintiffs, approximately three hundred and forty (340) employees of ACS and members of the Union Independiente de Trabajadores de Aeropuerto

<u>Rivera Cortes v. Airport Catering, Corp.</u>
Civil No. 98-2092 (JAG)
Report & Recommendation
Page No. 2

("UITA"), initiated their claim before the Puerto Rico Labor Relations Board, predicated on a collective bargaining agreement which was subject to arbitration.

Consequently, the UITA filed its complaint and successfully obtained an arbitration award[1] that was appealed by ACS before this Court under Civil No. 94-1979 (SEC). The award was sustained and the same was appealed before the Court of Appeals for the First Circuit. Pending the appeal, the parties engaged in negotiations and reached economic settlement agreements and obtained written releases from numerous complainants ("the Group Y plaintiffs"). Subsequently, the Court of Appeals for the First Circuit confirmed the ruling of the District Court sustaining the arbitration award. Thereafter, complainants filed a claim against ACS before the Labor Relations Board claiming a scheme of deceit and conspiracy as to the release agreements obtained from the Group Y plaintiffs, and failure to honor the award, lack of reinstatement or back pay as to those complainants who did not sign the releases ("the Group N plaintiffs").[2]

On September and October of 1998, ACS and the UITA removed plaintiffs' action to this Federal Court, pursuant to 28 U.S.C. §1446. For the purpose of removal, ACS submitted plaintiffs' case involved a hybrid cause of action under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, for having filed a claim for breach of the duty to fair representation of the UITA, as well as a breach of the collective bargaining agreement against ACS. Plaintiffs herein are thus former and present employees of ACS, which include in group

---

[1] Award No. A-2657 and A-1840-94.

[2] Filed with numbers CA-97-90 and CA 97-91, which were then consolidated.

"Y" those alleging being misled by the UITA into signing a release relinquishing their remedies by an arbitration award. The latter claim the releases were void and null upon lacking fulfillment of one of the clauses therein agreed upon by the parties which required the approval and signature of the Secretary of Labor and Human Resources.

ACS claims summary judgment is appropriate because both the Group Y and the Group N plaintiffs' causes of action are time-barred because they were filed after expiration of the six-month statutes of limitation for this kind of claims. Additionally, ACS submits as to the Group Y plaintiffs the approval of the Secretary of Labor was not a necessary nor legal condition for the validity of the employees' release wherein they relinquished backpay and re-employment rights. Finally, ACS claims all plaintiffs lack evidence in support of their claim for having failed to answer interrogatories by the time of filing ACS' motion for summary judgment. (Docket No. 35).

Plaintiffs have voluntarily dismissed their claims of unfair labor practice and of deceit as to their rights by actions of the UITA. As such, the UITA is not a party at this juncture. Accordingly, only the breach by ACS of the collective bargaining and the compliance with the arbitration award, construed pursuant to same, are now before this Court.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Anderson v.

---

[3] Plaintiffs' opposition addresses ACS' request for summary judgment, as well as a previous motion filed by co-defendant UITA, which is no longer a party to this action. Thus, we need not address the points included in plaintiffs' opposition which are related to the motion filed by the UITA.

Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505 (1986); s*ee* Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. Univ. of P.R., 864 F.2d 881, 894 (1st Cir. 1988). Thus, summary judgment is adequate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if, based on the substantive law at issue, it might affect the outcome of a case. A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

The Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110. S*ee* Leahy v. Raytheon Company, 315 F.3d 11, 17 (1st Cir. 2002) ( "... the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (*quoting* Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990); *see also* Plumley v. Southern Container Inc., 303 F.3d 364, 368-69 (1st Cir. 2002); Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003) (the Court "presents [the facts] in the light most favorable to the plaintiff.")).

## LEGAL DISCUSSION

**A. Group Y plaintiffs (Releases Signed, Deceit Claimed)**.

As to the Group Y plaintiffs, ACS claims it is entitled to summary judgment because the approval of the Secretary of Labor was not a necessary nor legal condition for the validity of the employees' release wherein they relinquished back pay and re-employment rights.

Plaintiffs in turn oppose ACS' argument alleging the releases of the Group Y plaintiffs are null and void for lack of signature of the Secretary of Labor. Plaintiffs, who were part of Civil Case No. 94-1979 (SEC), negotiated with ACS for the disposition of their claims through a "Transaction and Release Agreement", upon which they received payment of a sum certain and released ACS of all their employment related claims.[4] These plaintiffs, who subsequently joined the case at bar within one (1) to two (2) years of its filing, have been denominated herein as Group Y plaintiffs.

The three (3) factors which a contract requires are consent, object, and cause or consideration. Article 1213, P.R. Civil Code, P.R. Laws Ann. tit. 31, § 3391 (1990); Colegio Internacional SEK v. Escribá, 135 D.P.R. 647 (1994); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985). There is no controversy of fulfillment of above contract requisites in the release agreements, except for the now contested failure to contain the signature of the Secretary of Labor.

---

[4] ACS has submitted the translation of the release signed by plaintiffs who constitute Group Y, that is, the listed plaintiffs (one hundred and fifty three) enumerated in motions filed in Docket Nos. 100, 102, 105 (as to Mr. Eliseo Rivera Cortés, who release appears at paragraph 1, item a), 106, 107, 108, 110 (except for the copy of the check as to Ms. Carmen Marzán, whose release appears under number 35, pp. 293-301 of Docket No. 107 and Mr. José D. Robles, whose release appears under number 69 of Docket No. 108).

The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order. P.R. Civil Code, Sec. 1207, 31 L.P.R.A. §3372. A court may state the meaning of a contract on summary judgment if the agreement is clear on its face. Adria Intern. Group, Inc. v. Ferre Development, Inc.. 241 F.3d 103 (1st Cir. 2001).

A contract is to be interpreted in a manner which gives reasonable effect to its terms and conditions. Rodríguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 586 (1st Cir. 1993). The court must look at the contract as a whole and give meaning to all terms. Stryker Corp. v. National Ins. Co., 187 F.Supp.2d 4, 8 (D.P.R. 2002) (quoting Waldan Gen. Contractors, Inc. v. Michigan Mut. Ins. Co., 227 Mich.App. 683, 686, 577 N.W.2d 139, 140 (Mich.Ct.App. 1998).

Moreover, we must also consider the most basic of the provisions of the Puerto Rico Civil Code which regulate the interpretation of all "juridical acts," including contracts, to wit, Articles 168, 169, and 170. Article 168 provides "[a] legal act must be interpreted in accordance with its content and with the principle of good faith." Article 169 provides "[a] clause in a legal act is interpreted in the light of the other clauses, and those clauses which are dubious are ascribed the meaning arising from the whole." Finally, Article 170 reads that "[s]tatements that have several meanings must be understood to have the meaning that is most suitable to the nature

and object of the legal act."[5] *See* <u>Servicios Comerciales Andinos, S.A. v. General Elec. Del Caribe, Inc</u>. 145 F.3d 463, 473 (1st Cir. 1998).

Finally, we most also consider the concept of severability which applies especially where the contract contains a clause which expressly contemplates and provides for the severance of an illegal provision. <u>Transamerica Ins. Co. v. Avenell</u>, 66 F.3d 715, 722 (5th Cir. 1995). Still, when the severed portion is integral to the entire contract, a severability clause, standing alone, cannot save the contract. The severability of the contract clause allows the remaining provisions valid and enforceable. <u>Cherena v. Coors Brewing Co.</u>, 20 F.Supp.2d 282 (D.P.R. 1998).

Turning to the instant case, when the clauses of the release agreements are read together, it becomes clear the release agreements remain fully operational and functional even though they lack the signature of the Secretary of Labor. It is uncontested the Secretary of Labor of the Commonwealth of Puerto Rico did not sign the settlement contract referred to in the Group Y plaintiffs' releases. Nonetheless, this failure does not invalidate the release agreements, as proposed by the Group Y plaintiffs. We explain.

A perusal of the translated release signed between the Group Y plaintiffs and ACS shows Item 5 states: "[i]t will also be **a condition of payment** of the amount described in paragraph 2 of this Agreement, that the Secretary of Labor of Puerto Rico, or his authorized

---

[5] In addition, the Puerto Rico Civil Code Article 1237 states that contract clauses should be interpreted in relation to one another, giving to those clauses that might be unclear the meaning which a reading of the contract as a whole gives them. 31 L.P.R.A. § 3475 (1991). Since none of the contract clauses are unclear, it is not necessary to utilize Article 1237 to interpret this contract. <u>Hopgood v. Merrill Lynch, Pierce, Fenner & Smith</u>, 839 F.Supp. 98, 105 (D.P.R. 1993).

representative, have approved this agreement, including his signature at the end of this Agreement and Release". (Emphasis supplied.)

Additionally, item 12 states: "[i]f any provision of this document is declared null by a court with jurisdiction the other provisions of the document will continue in effect as if the portion declared null had not formed part of the same."[6]

First, we note a reading of Item 5 clearly shows that, as **a condition of payment,** the approval of the Secretary of Labor was required, including his signature. Thus, pursuant to the clear language of Item 5, the signature of the Secretary of Labor was required to guarantee the payment to plaintiffs. It is uncontested the Group Y plaintiffs were paid the amounts described in their agreements, even though the agreements lacked the signature of the Secretary of Labor. Thus, the payments in compliance with the agreements were enforced, without the signature of the Secretary of Labor. The Group Y plaintiffs accepted the payments at the time without contesting the lack of signature. Thus, to conveniently now claim in their opposition to the summary request the agreements are null because they lack the signature of the Secretary of Labor is without merit.

Second, we cannot read Item 5 alone in a vacuum but must be read in conjunction with the other clauses of the Agreements, including the severability clause included in Item 12 which

---

[6] Furthermore, Item 3 of the release agreement reads as follows: "[name] also expressly waive any claim, present or future, related directly or indirectly to the cessation of employment of [name] or which may arise from the employment relationship that ceased on [ date ], it being provided that [ name] waives, without being limited to, any claim which he/she may have or may have had in the past, known or not, alleged or not alleged, or which may be filed in the future in any other judicial or administrative with regard to: wrongful termination . . . or under any law or federal or state regulation or the Constitutions of the Commonwealth of Puerto Rico and the United States of America, as well as any claim for damages alleged pursuant to Article 1802 of the Civil Code of Puerto Rico."

indicates if any provision of the document is declared null by a court the other provisions of the document will continue in effect as if the portion declared null had not formed part of the same. Rodríguez-Abreu, 986 F.2d at 586; Stryker Corp., 187 F.Supp.2d at 8.

A perusal of the release agreements in this case shows there are no clauses which are in contravention of laws, moral and public order. Plaintiffs have failed to so argue. Thus, even if we were to find Item 5 of the agreement invalid, matter we need not address because the legality of Item 5 is not in question, thus making the signature of the Secretary of Labor unnecessary, the remainder of the agreement can be enforced. The agreement and releases are valid, enforceable, and unambiguous.

As such, when the Agreement is read *in toto*, the release agreements remain fully operational and functional even though they lack the signature of the Secretary of Labor. Thus, ACS is entitled to summary disposition of claims of the Group Y plaintiffs.

Accordingly, it is recommended that ACS' request for summary judgment of the claims of the Group Y plaintiffs BE GRANTED.[7]

### B. Group N plaintiffs.

The averments raised by ACS in its summary request as to the Group Y plaintiffs are not applicable to the Group N plaintiffs, except for ACS' claim the Group N plaintiffs' petition be considered time-barred.

Plaintiffs' opposition submits that, aside from their contention the UITA failed in its duty to represent them fairly, the employer conspired with the UITA to that end, not solely as to the

---

[7] In light of this conclusion, we need not address the other grounds raised by ACS in support of its request for summary judgment of the claims raised by the Group Y plaintiffs.

settlement agreement, which has been discussed herein as to the Group Y plaintiffs, but as to cause of action of Group N plaintiffs. Insofar as ACS's claim the action is time-barred for failure to file it within the six-month established under the National Labor Relations Act, plaintiffs aver having alleged deceit as to their rights by the UITA, thus, the exact date when these plaintiffs could have acquired actual or constructive knowledge of the unfair labor practice cannot be determined. (Docket No. 44). Thus, plaintiffs contend the limitation period for their claim, that is, the six month applicable to lawsuits under the National Labor Relations Act, should begin to run when there is actual or constructive knowledge of unfair labor practice and should be thus tolled when the unfair labor practice has been concealed. Furthermore, plaintiffs oppose ACS' request for summary disposition on grounds that, in the presence of determinations of motive, intent and claimed deceit, resolution is proper by a jury and/or on the merits.

**1. Tolling**.

The Supreme Court has held the applicable statute of limitations for breach of contract/duty of fair representation cases is the six-month limitations period for filing an unfair labor practice charge under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *See* DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281 (1983). The Court, concluding the six-month statute of limitations applied to claims arising against both employers and unions, reversed the Flowers[8] case, which was filed more than ten months after plaintiff's cause of action had accrued upon finding the union for

---

[8] Flowers v. Local 2602 United Steel, 671 F.2d 87 (2d Cir. 1982).

Rivera Cortes v. Airport Catering, Corp.
Civil No. 98-2092 (JAG)
Report & Recommendation
Page No. 11

breach of the collective bargaining agreement and breach of the duty of fair representation had no close analogy in ordinary state law. DelCostello's case, however, was remanded to determine whether "certain events operated to toll the running of the statute of limitations until about three months before [plaintiff] filed suit." 103 S.Ct. at 2294. *See* DelCostello v. Local 557, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 762 F.2d 1219, 1221 (4th Cir. 1985).

A cause of action in a hybrid Section 301/fair representation suit arises when plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing. Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299, 304 (7th Cir. 1983). *See* Graham v. Bay State Gas Co., 779 F.2d 93, 94 (1st Cir. 1985).

As mentioned above, Group N plaintiffs claim their cause of action is not time barred and the limitations period was tolled because, in light of the alleged deceit, they were prevented from prior discovery of the union's alleged wrongdoing and their cause of action. Taking the allegations of deceit in the light most favorable to plaintiffs, the Group N plaintiffs cause of action did not arise until they knew of the acts constituting the union's alleged wrongdoing, thus their claims were tolled until such knowledge. Accordingly, the cause of action of the Group N plaintiff is not time barred.

### 2. Insufficient evidence.

ACS has also raised that, upon plaintiffs' failure to answer interrogatories, their cause of action would not survive since there is insufficient evidence to substantiate same. In response, plaintiffs attached their individual answers, some prepared in December of 1999 and others

in January of 2000, which were sent to ACS on February 11, 2000. Their opposition to summary judgment was subsequently filed on February 18, 2000. Plaintiffs' opposition, although mainly predicated on the Group Y employees' releases falling under a theory of deceit, also indicates the claim of Group N plaintiffs as therein discussed would entail a contention the employer conspired with the UITA, and that in any event the action should be remanded to the state authorities for disposition.

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. A dismissal for failure to state a claim would be appropriate if the complaint on its face does not allege facts sufficient to sustain plaintiff's case. Fed.R.Civ.P. 12(b)(6). The court can also determine to entertain the matter as a summary judgment motion. Fed.R.Civ.P. 56(b) and (c).

There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 106 S.Ct. 1348 (1986). The moving party shows summary judgment is appropriate by demonstrating an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). A scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a summary judgment motion. Anderson, 477 U.S. at 242.

In Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903 (1967), the Supreme Court determined unions have wide latitude in deciding issues involving the processing of

<u>Rivera Cortes v. Airport Catering, Corp.</u>
Civil No. 98-2092 (JAG)
Report & Recommendation
Page No. 13

grievances. A union, caught in the middle between dueling employees is not obliged to throw some union members to the wolves merely to placate others. <u>Ayala v. Unión de Tronquistas de Puerto Rico</u>, 74 F.3d 344 (1st Cir. 1996).

As mentioned above, Group N plaintiffs claim this action should be remanded to the state authorities for disposition. To contemplate such remand, this federal forum could consider that, to succeed in a hybrid breach of contract and fair representation claim, plaintiff must establish not only the employer's breach of the contract but also that the union's breach its duty of fair representation.[9] Failure to prove either one of them results in failure of the entire hybrid action. <u>Miller v. United States Postal Service</u>, 985 F.2d 9 (1st Cir. 1993); <u>Chaparro Febus v. International Longshoremen Ass'n., Local 1575,</u> 983 F.2d 325 (1st Cir. 1993). Without any indication there was any breach of the collective bargaining agreement, plaintiff's claims are interlocked and thus would fail. [10]

If such is the case, and having defendant ACS removed this action filed by plaintiffs before state agencies, absent a hybrid cause of action,[11] it would be appropriate that, in lieu of the dismissal requested, the matter be remanded to the state forum for proper determination.

---

[9] Disgruntled employees must first prevail on their unfair representation claim in order to excuse failure to exhaust contractual remedies in a conventional manner. <u>Ayala v. Union de Tronquista de Puerto Rico</u>, 74 F.3d 344 (1st Cir. 1996).

[10] <u>Reed v. United Transp. Union</u>, 488 U.S. 319, 109 S.Ct. 621 (1989)

[11] The stipulation for voluntary dismissal as to the Union on March 9, 2000, and judgment thereof was entered on March 13, 2000 (Docket No. 49 and 50).

However, the claim herein submitted by Group N plaintiffs of non-compliance with the arbitration award is thus seeking its enforcement. The award submission was to the effect of the number of employees who were then still on lay-off by the Company as a result or not of the transfer of services from ACS to Sky Caterers, after the situation that arose of work stoppage caused American Airlines to cancel its food catering contracts with ACS. The award acknowledged since the beginning the Company promoted the exclusivity of a kitchen to give exclusive services to American Airlines. After lay-offs of its employees, plaintiffs herein, were made as a result of cancellation of flights, from which it recovered a few days thereafter and normality of its operation ensued, the Company kept the employees in lay-off for a longer period of time while it subcontracted the work performed by the contracting unit, thus producing the lay-off of Union employees. The award thus concluded ACS transferred operations to Sky Caterers and violated the collective bargaining agreement by maintaining the employees of the contracting units in lay-off. It ordered the reinstatement of employees, from a list submitted as a Exhibit 7 by the Company,[12] and salaries unearned by them, as of the moment in which the service of operations to American Airlines was normalized.

Non-compliance with the award is now predicated in the Company's own determination of when its operations with American Airlines were normalized. Plaintiffs on one hand claim operations normalized from about two or three days after the employees were laid off. The Employer, on the other hand, claims it should start about a year and a

---

[12] The National Labor Relations Board referred in its letter of December 19, 1997, that all employees entitled to reinstatement had been reinstated by the time the Court of Appeals issued its decision.. The complaint filed by plaintiffs on September 9, 1998, that was removed to this court, indicated that plaintiffs had not in deed by then been reinstated.

half later. Such a factual controversy presents a genuine material issue that would also preclude summary disposition as to the Group N plaintiffs.

Accordingly, any factual determination at this stage in the controversy would be necessarily attached to additional discovery and controverted evidence. For this reason, no summary dismissal is recommended as to the Group N plaintiffs.

## CONCLUSION

It is thus recommended that akin with the above, Group Y plaintiffs' action be summarily dismissed for being precluded by their settlement/release agreement as to which the clause requiring the signature of the Secretary of Labor of the Commonwealth of Puerto Rico and the lack thereof does not void the agreement and is further sustained by the severability of its clauses. Thus, it is recommended ACS' request for summary judgment, as to the one hundred and fifty three (153) plaintiffs whose releases were duly executed (Group Y) be GRANTED.

In addition, it is recommended ACS' request for summary judgment against the Group N plaintiffs be DENIED.

Thus, it is recommended that summary judgment be GRANTED in part and DENIED in part.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d

985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 24th day of February of 2005.

                                              s/ CAMILLE L. VELEZ RIVE
                                              CAMILLE L. VELEZ RIVE
                                              UNITED STATES MAGISTRATE JUDGE