IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ELISEO RIVERA CORTES, ET AL**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**AIRPORT CATERING SERVICES, CORP., ET AL**<br><br>**Defendants** | **CIVIL NO. 98-2092 (GG)** |

### GROUP "Y" COPLAINTIFFS' OBJECTIONS TO U.S. MAGISTRATE JUDGE REPORT AND RECOMMENDATIONS

TO THE HONORABLE COURT:

NOW COME Eliseo Rivera Cortés, and other co-plaintiffs belonging to Group "Y", referred to in paragraph 3 of the Second Amended Complaint of March 17th, 1999, who are represented by the undersigned attorney, and very respectfully state and pray as follows:

I    INTRODUCTION

In the "Report and Recommendation" of U.S. Magistrate Judge Hon. Camille L. Vélez Rivé of February 24th, 2005, it is recommended to this Honorable Court to dismiss co-plaintiffs' Group "Y" claims in this case.

Co-plaintiffs are former employees of Airport Catering Services Corp. ("A.C.S.") who signed documents titled "Transaction and Release Agreement" with A.C.S. and with their union, "Union Independiente de Trabajadores de Aeropuerto" ("U.I.T.A."), pending an appeal in Civil Case No. 94-1979 (SEC), in which appeal afterwards the Court of Appeals for the First Circuit confirmed an arbitration award in favor of said co-plaintiffs.  By said aware, they were entitled to reinstatement in their job positions at A.C.S. and back-pay.

In this case, said co-plaintiffs are alleging that the "Settlement Agreement and Release" signed by them was the result of misleading statements made to them by A.C.S. and the U.I.T.A.,

-1-

to the effects that they would not prevail in the case pending appeal –which was not true- and that A.C.S. would also close its operations if the case continued. Co-plaintiffs "Y" alleged that said misleading statements amounted to intimidation and coercion by the Employer and by the Union (paragraph 16, Amended Complaint). Co-plaintiffs filed with the court copies of their individual answers to interrogatories executed on December 1999 and January 2000 as exhibist to their "Opposition to Motion for Summary Judgment and Memorandum of Law in Support Thereof", dated February 18th, 2003 as per paragraph 18, p. 10 of said motion.

The interrogatories answered by them were notified to them by A.C.S. earlier on May 5, 1999, copies of some of which were attached by A.C.S. to its "Motion in Opposition…", dated February 17, 2000.  In the interrogatories, A.C.S. requested from plaintiffs information on the alleged  misleading statements:  Question "2, on how and the circumstances in which each co-plaintiff was misled upon signing the "Settlement Agreement and Release" documents; question #3, on how they became aware of having been mislead; question #4, on when and where they became aware of having been mislead; #10, on how they were intimidated and by whom; question #11 on how they were coerced and by whom.  In their answers, Group "Y" co-plaintiffs explained how they were mislead and/or intimidated and/or coerced.

In view of the above, there is a genuine controversy of facts on whether co-plaintiffs signed the above referred documents of "Settlement Agreement and Release" in error and/or intimidated and/or coerced by A.C.s. and by the U.I.T.A., in which case the alleged contracts of settlement and release are null and void. See Arts. 1217 and 12.18 – 1219 et seq, of the Civil Code of Puerto Rico ("C.C.P.R") on the need of a contractual consent free of error and/or intimidation as a precondition to a valid contract.

In addition, co-plaintiffs have asked this Honorable Court to ignore the alleged contracts of settlement and waiver of their right to back-pay and reinstatement and the releases, which rights were recognized by the arbitration awards, since the documents of "Settlement Agreements and

Releases" ("the agreements") never acquired validity. In order for said documents to be valid and error free and voluntary consent was required and the approval and signature of the Secretary of Labor of Puerto Rico as well. Said precondition of approval by the Secretary of Labor for the validity of the agreements was both legal and contractual. A.C.S. should not have disbursed the settlements proceeds to Group "Y" plaintiffs without first assuring itself of the approval by the Secretary of Labor and that his signature was affixed in the agreements, thus attesting to it.

II     OBJECTED STATEMENTS AND RECOMMENDATION CONTAINED IN THE U.S. MAGISTRATE JUDGE REPORT AND RECOMMENDATIONS

Notwithstanding the above, in the U.S. Magistrate Report and Recommendations, the following statements are made, which are hereby objected by Group "Y" plaintiffs:

1. That there is no controversy on the fulfillment of the contract requisites - consent, object and cause – in the agreements, except for the contested failure to contain the signature of the Secretary of Labor (page 5, Report and Recommendations).

Group "Y" co-plaintiffs object to said statement and determination since there is a genuine controversy on issues of facts as to the true intent, motives, and reasons behind co-plaintiffs' signatures in the agreement, which may not be adjudicated summarily. Plaintiffs' answers to interrogatories are eloquent on said controversy

2. That when the clauses of the release agreements are read together, it becomes clear that the release agreement "remain fully operational and functional even though they lack the signature of the Secretary of Labor", which failure does not invalidate the release agreements. (p. 7 Report and Recommendations). Additionally, the report and recommendations state that Item 5 of the agreement requires the approval and signature of the Secretary of Labor only as a condition for payment of the amounts therein stated, as a way to "…guarantee the payments to plaintiffs" (p. 8 Report and Recommendation), and that upon payment of said amounts, the agreements remain operational and functional (p. 9 Report and Recommendations).

- 3 -

Group "Y" co-plaintiffs object to the above statements in the Report and Recommendations, since the agreements by their own terms never became valid, nor effective or operational, and neither could become effective under applicable law in the absence of the approval and signature by the Secretary of labor.  The approval of the Secretary of Labor was not a pre-condition for payment in itself nor a guarantee of payment, since his signature could not add or detract anything on A.C.S. ability and willingness to pay the amounts therein referred.  It was just a legal and contractual precondition to the own validity of the agreements, their effectiveness and legal enforcement.  Payment of the amounts referred in the agreements by A.C.S. was premature and should have never been made in the absence of an official approval by the Secretary of Labor, and now it should be governed by the figure of the "quasi contract" of collection of the not-owed ("cobro de lo indebido") under Art. 1795 et seq of the C.C.P.R. (31 L.P.R.A 5121 et seq).

It is obvious that the agreements pursue various objectives of A.C.S.  One, to end up litigation on appeal concerning the validity of the award.  Two, to settle for a much lower amount the salaries owed by A.C.S. to co-plaintiffs under the award.  Three, to obtain from co-plaintiffs a waiver on their right to reinstatement under the award; and, Four, to obtain a full release by plaintiffs on all other possible claims under federal and state laws.

The documents of "Settlement Agreement and Release" are documents carefully drafted by lawyers of both A.C.S. and U.I.T.A., in an effort to comply with the legal requirements of both federal and state law.  Several clauses were inserted as a precondition to the validity and effectiveness of the agreements; to wit, that payment was to be effected "at the time in which this agreement becomes <u>valid and final</u>, that is, <u>at the 8th day of its signature</u>", (emphasis supplied.) (Item 4, p. 4, agreement); and that "it shall also be condition of payment of the sum described at paragraph 2 of the agreement, that the Secretary of labor of Puerto Rico or his authorized representative <u>has approved this agreement, including his signature at the end of this agreement and the release"</u>  (Emphasis supplied)  (Item 5, p. 5)

- 4 -

Reading the text of the agreements <u>in its entirety</u>, in which effort the clause on severability – item 12 – has no relevancy, we may conclude that if the approval and <u>signature</u> of the Secretary of Labor was required at the end of the document under item 5, and if the agreement itself stated that it would be <u>valid and final</u> at the 8th day following <u>its signature</u>, the signature of <u>all required persons</u> was needed as a condition to its validity and effectiveness.

Group "Y" co-plaintiffs are not arguing that any clause of the agreement is null and void, but rather that it never came nor could come into effect without the approval <u>and signature</u> of the Secretary of Labor. Certainly, Group "Y" co-plaintiffs and the Union were free to include in the form of the agreement all clauses and conditions convenient to them, unless said clauses are contrary to law, and public moral or order. Also see Art. 1267 of the C.C.P.R. Art. 4 of the same Code (31 L.P.R.A. 4), which states that all acts done against the law shall be null, and that waivers of rights which are against the law, the public interest or order consequently shall also be null.

The true reason for requiring the approval of the "Settlement Agreement and Release" by the Secretary of Labor and his signature in the agreements is contained in Art. 13 of Law No. 379 of May 15, 1948, as amended (29 L.P.R.A. 282), which requires:

"All employees who receive a <u>compensation lower</u> than the one fixed in Sections 271 to 288 of this title <u>for regular hours</u> and extra hours of work…shall have the right to recover from their employer by civil action the upaid amounts…

…

…

…

'The judicial claims may be made by one or various employees by themselves in their names or of other employees who are in similar circumstances; However, after the claim is initiated judicially, it may be settled by the parties, with the intervention of the Secretary of Labor and Human Resources as…and the approval of the Court…" (Our translation.)

- 5 -

It is obvious from the above legal disposition that a <u>claim for back-pay</u> for the period of time in which the arbitration award determined that Group "Y" co-plaintiffs were entitled to receive compensation by way of lost salaries from A.C.S., is a claim for "<u>compensation lower than the one fixed</u>" by law under the collective bargaining agreement in effect between the parties, during which period co-plaintiffs received no compensation at all from A.C.S. Under the hermeneutic principles applicable to the construction and interpretation of labor statutes in Puerto Rico, a liberal construction and interpretation in favor of the employees must be the one used. See <u>Acevedo Arroyo, et al v. Puerto Rico Sun Oil</u>, Opinión of June 15, 1998, 98 T.S.P.R. 73, 144 D.P.R. _____, page 20, on the interpretation and liberal construction of remedial statutes such as Law No. 379 (supra) and the cases therein cited: <u>Teresa González v. Star Kist Caribe, Inc.</u>, opinion of January 28, 1994, and others. Also see <u>Almodóvar v. Margo Farmers del Caribe, Inc.</u>, Opinion of April 14, 1999, 99 T.S.P.r. 55.

To comply with the rulemaking delegation of powers granted to the Secretary of Labor in Sec. 13 of Law No. 379 (supra), the Secretary of Labor approved a regulation governing the approval of settlements, Regulation No. 3060 of December 5, 1983 (**Exhibit 1**), which was in effect at the time the agreements were signed by all required persons except the Secretary of Labor, and it fixes the administrative procedures required by the Secretary to approve settlements, including releases. The need to follow its terms was considered with approval by the Supreme Court of Puerto Rico in the Opinion of September 30, 2002, 2002 T.S.P.R. 131, in the case of <u>Benítez Esquilín, et al v. Johnson and Johnson C.P.I.</u>

Since in the agreements co-plaintiffs were <u>settling</u> their claims and rights to collect wages and salaries from A.C.S., without the approval of the Secretary of Labor no validity attained to said pretended contracts of settlement. See <u>P.R. Glass Corp. v. Tribunal Superior,</u> 103 D.P.R. 223 (1975), in which Art. 13 of Law No. 379 (supra) and Art. 1709 et seq of the C.C.P.R. on the Settlement Contract (31 L.P.R.A. 4821 et seq), were considered. With respect to waivers of rights

such as those referred to in the agreements, when associated with a settlement, the waiver is limited to those pertinent to the settled dispute. See Art. 1714 of the C.C.P.R. (31 LPRA 4826). In the case of <u>Arce Burcetta, et al v. Motorola Electrónica de P.R., Inc.</u>, Civil No. DPE98-0117, the Superior Court of Bayamón (**Exhibit 2)** sustained the illegality of the execution of releases of waiver of labor rights by employees without the approval of the Secretary of Labor, including the right to claim salaries, wages and overtime compensations, which was affirmed by judgment of the Circuit Court of Appeals, KLCE0001392, Resolution of May 30, 2003.

III    CONCLUSION

The proposed determinations of fact and conclusions of law made by U.S. Magistrate Judge Hon. Camille L. Vélez Rivé in her Report and Recommendations of February 24th in support of her recommendation to dismiss the complaint with respect to Group "Y" co-plaintiffs, are objected by co-plaintiffs, for the following reasons:

1. The interpretation of the agreements therein made is contrary to their own terms, which require the approval and signature of the Secretary of Labor, 1 of the required 4 signatures to be affixed at the end, without which they did not become effective since the agreements were to be valid and final only on the 8th day following the signature by all required persons.

2. Applicable law, regulations and case law on approval of settlements of claims of salaries in Puerto Rico was "ignored by U.S. Magistrate Judge Vélez Rivé, under which co-plaintiffs claim that their right to collect salaries from A.C.S. was not effectively settled nor that they waived any right in the absence of an approval by the Secretary of Labor, and of his signature at the end of the agreements.

3. The construction and interpretation of the agreements and of applicable law as made by U.S. Magistrate Judge is contrary to the hermeneutic doctrine in effect in Puerto Rico of liberal construction and interpretation of remedial labor statutes in favor of employees.

4. The Report and Recommendation ignores the presence of a genuine controversy of facts on whether the agreements are null and void because of co-plaintiffs' defective consent due to error and/or intimidation and/or coercion, which prevents the summary disposition of said issue.

WHEREFORE, it is respectfully prayed from this Honorable not to accept the recommendations made in the Report and Recommendation of February 24, 2005 of U.S. Magistrate Judge Hon. Camille L. Vélez Rive on the proposed dismissal of Group "Y" co-plaintiffs' claims, and to deny A.C.S. Motion for Summary Judgment.

Respectfully submitted.

In San Juan, Puerto Rico, this 28th day of March, 2005.

I HEREBY CERTIFY that on this same date a true and exact copy of the foregoing documents has been electronically filed with the Clerk of the Court using the CM/EFC system, which will send notification of such filing to the following attorneys: Fernando A. Baerga, José Carreras and Alberto R. Estrella Arteaga.

> S/LUIS R. MELLADO GONZALEZ
> USDC-PR 116714
> 239 ARTERIAL HOSTOS SUITE 404
> SAN JUAN, PUERTO RICO 00918-1475
> TELEPHONE (787) 767-2543
> FAX (787) 767-2575
> EMAIL:  lmellado@coqui.net