ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE BAYAMON

| | |
|---|---|
| JOSEFA ARCE BUCETTA Y OTROS | CIVIL NUM.: D PE98-0117 (505) |
| DEMANDANTES | |
| Vs. | SOBRE: |
| MOTOROLA DE PUERTO RICO, INC. | ACCION CIVIL |
| DEMANDADOS | |

### RESOLUCION

Se encuentran ante nuestra consideración los escritos de las partes de epígrafe, relacionados con la solicitud de sentencia sumaria parcial presentada por Motorola Electrónica de Puerto Rico, Inc. ("Motorola"), en la que solicita la desestimación de la demanda contra 194 de los 227 demandantes[1]. En síntesis, alegó que éstos carecen de causa de acción toda vez que al terminar la relación de empleo con Motorola estos firmaron un contrato de transacción y relevo general (en adelante "relevo"); que con la intervención de empleados del Departamento del Trabajo (en adelante "Departamento") le relevaron de cualquier reclamación que tuviesen contra ésta y en consideración a ello, se le pagó una suma de dinero a cada uno, calculada a base de los años de servicio

El día 8 de febrero de 2000, Josefa Arce Bucetta y otros (en adelante los "Demandantes") presentaron su escrito de oposición a la solicitud de sentencia sumaria[2]. Adujeron que representantes de Motorola anunciaron el cierre de la planta y que para que los empleados permanecieran en sus puestos, les ofreció a ciertos empleados un pago por separación; que el mismo fue concedido con el propósito de lograr un cierre de operaciones ordenado y gradual; que alguno de los demandantes firmaron el contrato de adhesión que incluía cláusulas de renuncia de derechos o relevos como condición para recibir el pago de una "mesada mejorada" ofrecida por Motorola.

---

[1] La moción de sentencia sumaria fue presentada el 3 de enero de 2000. Acompañó con su escrito la siguiente prueba documental. Anejo A, Anejo B-1 hasta Anejo B-178 y; Anejo C-1 y Anejo C-2.

[2] La parte demandante no presentó documentos con su escrito. En cambio solicitó término para presentar "contra-declaraciones juradas".

2717

Además, adujeron que en algún momento antes de firmar el documento compareció un representante del Departamento quien se reunió en grupo con ellos, alegadamente les asesoró y firmó el documento. El mismo incluía la palabra "aprobado" y en algunos documentos la palabra fue sustituida por la palabra "asesorado". Además, indicó que al momento de la firma de los documentos no le habían reclamado al patrono por los conceptos que reclaman en la demanda.

La parte arguyó también que no se perfeccionó el contrato de transacción, sino, que lo que trató de conseguir el patrono era una renuncia ilegal y sin causa para los empleados de otros derechos y reclamaciones no relacionados con el cierre de las operaciones; que las renuncias generales de derecho se extienden únicamente a los derechos relacionados con las disputas; que el caso no es de vicio del consentimiento sino de inexistencia de causa contractual; que los relevos y las renuncias son nulas y; que el hecho que los empleados del Departamento del Trabajo hayan asesorado a los empleados de Motorola no implica que el Secretario del Trabajo aprobó los acuerdos de relevo.

El día 22 de febrero de 2000, Motorola presentó una réplica a la oposición de los demandantes. Adujo que el caso no se trataba de despidos sino, renuncias voluntarias; que al tiempo de la firma del documento entre las partes existía una relación jurídica incierta y causa contractual; que en el documento se transigió toda reclamación relacionada con sus empleos y la terminación del mismo; que los derechos concedidos en la Ley 379 supra, son transigibles extrajudicialmente siempre que se verifique el contrato ante los abogados del Departamento del Trabajo.

El día 10 de marzo de 2000, la parte demandante presentó un escrito intitulado "Moción de los Demandantes en Contra de la Solicitud de Sentencia Sumaria y en Dúplica a Réplica de la parte demandante"[3]. En síntesis, alegaron que no se perfeccionó el contrato de transacción entre las partes; que los relevos son nulos por ser contrarios a la ley; que la verdadera intención del patrono no fue transigir reclamaciones salariales sino, asegurarse un cierre gradual y ordenado de las operaciones de la planta; que los demandantes no recibieron nada a cambio de las reclamaciones potenciales.

El día 27 de marzo de 2000, Motorola presentó otro escrito, y entre otras cosas arguyó que el escrito era tardío e insuficiente; que a tenor con los hechos incontrovertidos procede la concesión del remedio solicitado; que la evidencia que acompaña la dúplica presentada por los

---

[3] Acompañaron con el escrito declaración jurada suscrita por tres de los demandantes.

demandantes es inadmisible; que el contrato claramente dispone que en consideración del pago de dinero recibido ofrecía a Motorola el más completo relevo de responsabilidad y renuncia de derecho a favor de Motorola. En adición, se reiteró en su contención en cuanto a que el contrato era válido.

La acción de marras tuvo su inicio cuando el 11 de febrero de 1998, 227[4] demandantes presentaron al Tribunal la demanda en reclamación por los siguientes conceptos: (1) horas trabajadas durante el período de tomar alimento; (2) horas trabajadas el séptimo día; (3) vacaciones dejadas de disfrutar según decreto mandatorio; (4) horas extras adeudadas a los empleados del segundo y tercer turno; (5) vacaciones pagadas insuficientemente a un tipo de salario menor al correspondiente. Las alegaciones de la demanda hacen referencia a "empleados temporeros" y/o "empleados permanentes".

Los demandantes presentaron inicialmente la acción como un pleito de clase. Alegaron representar una clase de 1200 empleados y ex empleados de Motorola. Mediante resolución dictada el 23 de julio de 1998, el Tribunal declaró no ha lugar la petición de certificación de la clase, por lo que la acción se tramitará individualmente para cada uno de los demandantes.

## RESOLUCION

Analizadas las alegaciones de la demanda, los escritos y sus anejos concluimos que los siguientes hechos no están en controversia:

1. Motorola Electrónica de Puerto Rico es una corporación organizada bajo las leyes del Estado de Delaware y operaba una planta de manufactura de equipo de comunicaciones en el Municipio de Vega Baja, Puerto Rico.

2. Los demandantes son ex-empleados de Motorola y/o sus antecesores y ocuparon distintas posiciones de la planta del patrono hasta el 1998, año en que la querellada cesó operaciones.

3. En atención al cierre de operaciones de la planta, Motorola estableció un programa de separación voluntaria de sus empleados y otro de separación involuntaria. Para poder ser participante y recibir los beneficios del programa, cada empleado debía firmar el formulario de "Acuerdo y Relevo General de Reclamaciones Contra Motorola" y no

---

[4] Se encuentra pendiente de resolver, una solicitud de la parte demandante a los fines de que el Tribunal autorice la enmienda a la demanda para incluir en el pleito 115 demandantes adicionales. Dicha moción va a ser atendida luego de disponer de la solicitud de sentencia sumaria ante nos.

revocarlo después de los siete días siguiente al día de la firma. Al momento de separarse de sus empleos algunos de los demandantes firmaron los documentos preparados por Motorola.

4. En el documento los trabajadores relevan al patrono de cualquier responsabilidad y, renuncian a todo derecho o causa de acción conocida o no, relacionada con la relación de empleo o su terminación respecto a las leyes protectoras de los trabajadores que se señalaron específicamente en el documento, incluyendo las causas de acción en virtud de las cuales se instó la reclamación de marras.

5. Los demandantes recibieron una orientación por parte de unos empleados del Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico sobre las disposiciones del contrato que los demandantes tenían que firmar para acogerse al plan de beneficios por terminación de empleo.

6. El documento de Acuerdo y Relevo en el inciso 12 indicaba lo siguiente:

> "El empleado reconoce y asegura que: (a) ha firmado este Relevo libre y voluntariamente, y ninguna declaración hecha por la Compañía le ha coaccionado o influenciado indebidamente para firmar este Relevo; (b) entiende las consecuencias legales de firmar este Relevo, las cuales incluyen que con su firma en este documento renuncia a toda causa de acción o reclamación en contra de la Compañía que conocía o podía conocer a esta fecha; (c) ha tenido la oportunidad de consultar con un abogado antes de firmar este Relevo; (d) ha tenido un término razonable para considerar este Relevo; y (e) no ha descansado en promesa, declaración o representación alguna hecha por la compañía con relación a éste Relevo que no esté expresamente incluida en este documento o en el Programa.

7. Al final de todos los documentos intitulados "Relevo General" y "Acuerdo y Relevo General" aparece un párrafo que leía lo siguiente:

> "Aprobado
>
> Yo, _____, en representación del Secretario del Trabajo y Recursos Humanos de Puerto Rico firmo el presente Relevo hoy ___ de _____ de 1998, a los fines de aseverar que he leído el documento que antecede y he informado al Empleado de los efectos y las consecuencias legales de cada una de sus cláusulas. Asimismo he asesorado a éste sobre los derechos y obligaciones al amparo de la legislación protectora del trabajador.
>
> _____
> firma"

8. Dichos párrafos fueron completados por la Sra. Lucila M. Vázquez Iñigo o Sr. Domingo E. Chacón de Peña, ambos, empleados del Departamento del Trabajo.

2720

9. En un gran número de los documentos, la palabra "aprobado" fue tachada y sustituida a manuscrito por la palabra "asesorado".

10. En consideración de la firma del Acuerdo por los Demandantes, Motorola les pagó una suma de dinero como pago especial por separación, calculada en atención a los años de servicios de éstos.

11. A la fecha que los empleados firmaron los documentos, éstos no tenían reclamación alguna tramitándose administrativamente ante ninguna de las Oficinas del Negociado de Normas del Departamento del Trabajo y Recursos Humanos relacionadas con las cantidades reclamadas en el caso de marras.

12. Los escritos que los empleados firmaron no fueron aprobados por el Secretario del Departamento del Trabajo ni por ningún representante designado por éste a tales efectos en calidad de transacción.

## DISCUSION

La Regla 36 de las de Procedimiento Civil de Puerto Rico permite a las partes de un pleito presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumaria a su favor. *Casto Soto v. Caribe Hilton*, 137 D.P.R. 294 (1994). El propósito de esta regla es aligerar la tramitación de un caso, pues permite que se dicte sentencia sin necesidad de celebrar la vista en sus méritos, siempre que surja que de los documentos no controvertidos que acompañan la solicitud que no existe controversia sustancial sobre hechos materiales y que procede como cuestión de derecho dictar sentencia sumaria. *Sotomayor v. American International Insurance Co.*, 137 D.P.R. 356 (1994); *Pilot Life Insurance Co. v. Crespo*, 137 D.P.R. 624 (1994).

La jurisprudencia reiteradamente ha sostenido que el mecanismo de sentencia sumaria no es aconsejable cuando hay elementos subjetivos, de intención, propósitos mentales, negligencia o cuando el factor credibilidad sea esencial para resolver el caso. *Col. de Ingenieros v. AAA*, 131 D.P.R 735 (1992).

En atención a lo previamente señalado y en virtud de los escritos presentados por ambas partes nos toca resolver si en esta etapa del proceso existe alguna controversia sustancial sobre hechos materiales que nos impida dictar sentencia sumariamente respecto a la reclamación ante nuestra consideración.

La acción de marras se relaciona con una alegada relación contractual. Se alega que algunos de los demandantes renunciaron a cualquier posibilidad de causa de acción contra Motorola mediante un contrato de transacción. Por lo tanto, debemos repasar algunos principios que privan en la materia.

Los pactos entre contratantes tienen fuerza de ley y deben cumplirse a tenor con los mismos, Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994. Los contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por conveniente, <u>siempre que no sean contrarios a las leyes, a la moral y al orden público</u>. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. (Subrayado Nuestro)

Si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus cláusulas. Los Tribunales de Justicia no pueden dispensar a una parte en un contrato legal, válido y que no adolece de vicio alguno de cumplir con lo que se obligó. <u>Cervecería Corona v. Commonwealth Ins. Co.</u>, 115 D.P.R. 345 (1984) <u>Constructora Bauzá, Inc. v. García López</u>, 129 D.P.R. 579 (1991).

No obstante, el Artículo 4 del Código Civil 31 L.P.R.A. sec. 4 dispone que:

> "...Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero"

Igualmente el Artículo 20 del Código Civil 31 L.P.R.A. sec 20 dispone:

> "Cuando las leyes, para prevenir o por motivos de utilidad pública, declaren ciertos actos nulos, sus disposiciones no deben ser dispensadas o incumplidas por la razón de que haya sido probado que en la cuestión particular de que se trate no haya fraude o no resulte contraria a la utilidad pública."

En nuestro ordenamiento jurídico se puede considerar nulo la cláusula en un contrato que se ha celebrado en violación a una prescripción o prohibición legal, fundado sobre motivos de orden público. Véase <u>Corporación Azucarera v. Junta Azucarera</u>, 77 D.P.R. 397 (1954). Por ello, debemos determinar si en nuestra jurisdicción los trabajadores como condición, en un contrato de transacción y/o terminación de empleo pueden válidamente renunciar a los derechos concedidos por la Ley 379, supra bajo el palio de la cual se reclama en la presente acción.

El artículo 1709 del Código Civil 31 LPRA sec. 4821 define la transacción como;

> "un contrato por el cual las partes dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito o ponen término al que habían comenzado."

2722

SUPREMO   2761

El Profesor Vélez Torres al comentar el referido artículo indica que para que nazca el contrato las siguientes condiciones deben estar presentes: (1) incertidumbre de las partes sobre la extensión de derechos y limitaciones resultantes de una determinada relación jurídica y, como consecuencia de ello; (2) sustitución de la incertidumbre por una nueva relación, cierta e indiscutible; (3) concesiones recíprocas de las partes. Véase: Vélez Torres, Curso de Derecho Civil, Derechos de Contratos, Rev. Jur. U.I.A., Tomo IV, Vol. II, 1990, págs. 495 y siguientes.; Citibank, N.A. v. Dependable Ins. Co., Inc., 121 DPR 503 (1994).

Como en todo contrato, para su perfeccionamiento tienen que concurrir los elementos de consentimiento, objeto y causa. En el caso de los contratos de transacción el objeto del contrato es la relación jurídica incierta o las diferencias suscitadas entre las partes y la causa la eliminación de la controversia a la que se refiere el contrato. Véase Vélez Torres, J.R., Curso de Derecho Civil Derecho de Contratos, supra; Rivera Rivera, Luis R., El Contrato de Transacción, sus efectos en situaciones de solidaridad, Jurídicas Editores, San Juan, PR, 1998.

En el caso Citibank v. Dependable Insurance Co., 121 D.P.R. 503, 512-513 (1988), nuestro Honorable Tribunal Supremo dispuso lo siguiente con respecto a los requisitos esenciales del contrato transaccional:

> "PRIMERO, ha de existir una relación jurídica incierta, o sea, 'pretensiones contrarias, motivadas por una incertidumbre jurídica, bien porque el posible derecho de las partes sea incierto, dudoso objetivamente o porque aquellas estiman que a su juicio hay una incertidumbre aunque en la realidad no la haya'. SEGUNDO, ha de haber la intención de eliminar la incertidumbre. La intención de las partes ha de ser la de sustituir la 'relación dudosa por una que sea cierta para ellas e incontestables'. POR ULTIMO, tienen que hacerse concesiones recíprocas, este es el elemento que le da el carácter de contrato bilateral a la transacción. El fin transaccional, 'sólo se consigue sacrificando las partes sus pretensiones en la controversia, pero en nada obliga a que esas concesiones recíprocas sean perfectamente equivalentes. . . estos sacrificios económicos pueden ser de orden moral o tener contenido económico y han de ser recíprocos porque en otro caso existiría una mera renuncia."

Por otro lado, sobre la renuncia de derechos el segundo párrafo del Artículo 1714 del Código Civil, 31 L.P.R.A. sec. 4826 dispone:

> "... La renuncia general de derechos se entiende solo de los que tienen relación con la disputa sobre que ha recaído la transacción."

El artículo tiene por objeto determinar la extensión de la transacción o los límites de su objeto. Su fundamento estriba en que siendo por su naturaleza determinada la *litis* o la controversia extrajudicial, necesariamente tiene que tener dicho carácter la transacción, aun

2723

SUPREMO    2762

cuando se haya llevado a efecto en términos generales, y por tal motivo, se le considere general. Véase Manresa, José D., Comentarios al Código Civil Español, T.XII, 6ta ed., Reus, Madrid, 1973, pág.160. Por lo tanto, la extensión del contrato no se extiende a lo desconocido o ignorado, sino restrictivamente solo a los puntos que fueron objeto de discusión en la contienda.

En parte, la reclamación de marras encuentra uno de sus fundamentos en el Artículo II Sección 16 de la Constitución del Estado Libre Asociado de Puerto Rico que dispone:

> "Se reconoce el derecho de todo trabajador a... una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley."

Mediante la referida sección se quiso ofrecer al trabajador puertorriqueño una protección social estable elevando al rango constitucional la garantía relativa a la jornada de ocho horas de trabajo. De este modo, por mandato constitucional, se ofrece protección a la salud, seguridad y vida de los trabajadores mediante la eliminación de condiciones de explotación del trabajador a base de jornadas excesivas. *Almodóvar v. Margo Farms del Caribe*, 99 J.T.S. 62 Op. de 14 de abril de 1999.

La Ley de Horas y Días de Trabajo de Puerto Rico, Ley 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 et seq. (en adelante "Ley 379"), encarna el mandato constitucional del pago de horas extras. Dicha ley establece concretamente lo relativo a la jornada de trabajo y el pago de horas extras.

Con relación al derecho de los trabajadores al pago de horas extras el Artículo 12 de la Ley de Horas supra, declara "irrenunciable la compensación adicional a base de tipo doble de salario que fijan las secs. 271 a 288 de este título para las horas extras de trabajo". En el párrafo siguiente dispone que "será nula toda cláusula o estipulación en virtud de la cual convenga el empleado en renunciar al pago de la compensación adicional por horas extras que fijan las secs. 271 a 288 de este título".

El texto citado de la Ley 379 supra, recoge el principio rector en cuanto a la irrenunciabilidad de los derechos establecidos en la legislación de pago de horas extras. Tal y como se dispone, la norma general en nuestra jurisdicción es que los empleados no pueden mediante contratación renunciar a los beneficios que establece el referido estatuto.

Aduce Motorola que el Artículo 13 de la Ley 379 supra, autoriza a los trabajadores a transigir extrajudicialmente siempre y cuando se verifique el contrato ante el Departamento del Trabajo. El citado artículo en lo concerniente dispone:

> "...Será nula toda transacción extrajudicial sobre el pago del salario correspondiente a las horas regulares, a las horas extras de trabajo, al período señalado para tomar los alimentos o sobre el pago de la suma igual a la reclamada que fija este capítulo por concepto de liquidación de daños y perjuicios; <u>Disponiéndose, sin embargo, que será válida a los propósitos de esta ley toda transacción que se verifique ante el Secretario del Trabajo y Recursos Humanos o ante cualesquiera de los abogados o funcionarios del Departamento del Trabajo y Recursos Humanos designados por dicho Secretario.</u>" (subrayado nuestro).

La referida disposición establece las condiciones y términos bajo los cuales se puede transigir la reclamación que pueda tener el empleado. Las reclamaciones pueden ser válidamente transigidas únicamente si interviene el Secretario del Trabajo, sus abogados o aquellos funcionarios específicamente designados por éste para aprobar transacciones judiciales o extrajudiciales, que se realicen ante el Negociado de Normas o cualquiera de las oficinas de áreas por mutuo acuerdo, a satisfacción y para beneficio del empleado y el patrono.

Igualmente, los demandantes reclaman el pago por licencia de vacaciones de conformidad con el Decreto Mandatorio Núm. 81 promulgado para la industria de metales, productos eléctricos, por la Junta de Salario Mínimo. El referido Decreto en lo concerniente dispone:

> "Será ilegal y nulo cualquier contrato mediante el cual el empleado renuncie, por dinero u otra causa, a disfrutar de hecho sus vacaciones, a menos que medie un permiso del Secretario o cualquier agente autorizado por él para permitir a cualquier empleado renunciar por dinero al disfrute de sus vacaciones."

El derecho a vacaciones consiste del disfrute y paga de las misma. Estas no pueden ser segmentadas a no ser por previo acuerdo mutuo entre patrono y empleado, y no por más de dos periodos. El derecho a vacaciones es uno irrenunciable por lo que los días acumulados en exceso a los dos años serán liquidados a razón del doble que corresponda. *Hernández v. Espinosa*, 98 J.T.S. 41, Op. de 3 de abril de 1998.

En atención a los fundamentos de derecho expuestos debemos evaluar los planteamientos relativos al contrato de transacción y la validez de la renuncia de derechos contenidos en los documentos firmados por varios de los demandantes.

Aduce la parte demandada que el documento suscrito por los empleados constituyó un contrato de transacción válido mediante el cual los empleados relevaron a Motorola de todas las reclamaciones de los empleados en su relación de empleo con ésta. No le asiste la razón.

2725

SUPREMO   2764

Luego de evaluar la totalidad de las circunstancias sobre las cuales no existen controversias de hechos, concluimos que los empleados no transigieron las reclamaciones planteadas en el caso de marras, y que la cláusula siete (7) del documento Acuerdo y Relevo suscrito por alguno de los demandantes, constituye una renuncia ilegal de derechos por lo que se deben tener por no puestas. Veamos.

En primer lugar, no existe controversia entre las partes de que a la fecha que los empleados se reunieron con personal del Departamento del Trabajo no existía reclamación alguna tramitándose administrativamente ante la Oficina del Negociado de Normas del Departamento del Trabajo y Recursos Humanos por cantidades no pagadas de conformidad con la Ley 379 supra, y el Decreto Mandatorio Número 81, supra. Tampoco existían exigencias o pretenciones contradictorias entre las partes en ese sentido. Por lo tanto, no se puede hablar de una transacción con relación a unos hechos sobre los cuales no existían disputas entre las partes.

Como supuesto de perfeccionamiento, el contrato de transacción requiere que las partes tengan dudas sobre la validez o corrección jurídica de las respectivas pretensiones que dan lugar a la controversia y que se ha optado por resolver haciendo mutuas concesiones luego de un proceso de negociación. La prestación de una cantidad de dinero no sustituye el requisito de una pretención contradictoria entre las partes. Por lo tanto, consideramos que no se perfeccionó un contrato de transacción por lo menos en cuanto a las causas de acción incoadas en el pleito de marras.

Los documentos que Motorola ha presentado como defensa contra los demandantes, tan solo constituye una invitación a renunciar a los derechos que la ley concede en beneficio de los trabajadores. En ninguna parte de estos documentos se puede deducir que existiese controversia en cuanto a los derechos de los empleados por beneficios no percibidos por éstos. La validez jurídica de tal renuncia debe evaluarse a la luz de la legislación especial protectora de los trabajadores y los principios generales que se informan en nuestra jurisdicción en materia de renuncia de derechos.

Como señalamos antes, la legislación laboral establece la norma general de que los derechos concedidos en tales disposiciones legales no pueden ser renunciadas salvo en circunstancias excepcionales y habiéndose cumplido lo prescrito por las leyes especiales a esos fines. Ello es un imperativo para asegurar la protección que el legislador quiso darle a los trabajadores y evitar que se incumpla dicha intención.

2726

No existe controversia en cuanto a que Motorola no solicitó al Secretario del Departamento del Trabajo permiso para variar las condiciones de trabajos establecidas para la industria de manufactura de aparatos eléctricos. Por lo tanto, las condiciones de trabajos que regían a los empleados de Motorola era lo dispuesto en el decreto mandatorio 81, supra y la Ley 379 supra.

La posición de Motorola es que la renuncia de los derechos es válida toda vez que en el proceso que terminó la relación de empleo participaron empleados de Departamento del Trabajo por lo que se cumplió con lo dispuesto en la Ley 379, supra. No concurrimos con dicho argumento. Tal y como indicamos antes, el documento suscrito por los trabajadores no constituye propiamente una transacción de las causas de acción reclamadas en la acción de marras. No obstante, aún cuando a los fines de la presente discusión consideremos que el escrito tenía la vocación de acuerdo transaccional, concluimos que el mismo no es válido toda vez que no se realizó conforme al mandato de la Ley 379 supra en cuanto a la aprobación requerida por parte del Secretario del Departamento del Trabajo.

Luego de evaluar el historial de la ley caso concluimos que dicha disposición no se refiere a cualquier intervención de miembros del Departamento del Trabajo, sino, que el legislador contempló una participación activa del Secretario o su representante designado para que apruebe la referida transacción respecto a cada uno de los trabajadores luego de evaluar las condiciones y circunstancias en la relación de empleo de cada uno con el patrono.

En el caso de autos no existe duda de que al momento en que los empleados firmaron los referidos acuerdos, no existía querella ni trámite administrativo ante el Departamento por parte de los trabajadores por razón de los beneficios concedidos por la ley protectora del Trabajo. La participación de los representantes del Departamento del Trabajo se limitó a brindarle asesoramiento a los empleados sobre el contenido de los documentos a ser suscritos por los empleados; los funcionarios del Departamento del Trabajo no impartieron su aprobación al documento que contenía la renuncia de derechos en controversia, independientemente de que éstos tuvieran o no, la facultad en ley de impartir aprobación a los acuerdos transaccionales que se someten ante el Departamento. Por lo tanto, forzado es concluir que la alegada transacción no fue avalada por el Secretario del Departamento del Trabajo o su representante, ni por ende, realizada conforme a lo dispuesto por el Artículo 14 de la Ley 379, supra.

Como fundamento adicional para denegar la desestimación sumaria de las reclamaciones, debemos mencionar que el derecho a paga adicional por periodo de vacaciones no disfrutada es irrenunciable. Dicha partida no puede ser dispensada contractualmente por las partes a no ser que medie un permiso especial previo del Departamento del Trabajo a tales fines. Por lo tanto, aquella parte del documento que expone la renuncia del derecho de paga adicional por vacaciones no disfrutadas también es nula y debe tenerse por no puesta.

Por lo anterior, debemos concluir como cuestión de derecho que en el caso de marras no se configuró un contrato de transacción respecto a las reclamaciones ante nuestra consideración. Al no ser válida legalmente la renuncia de derechos pretendida por Motorola, no existe impedimento legal para que los empleados insten la presente reclamación. Lo aquí dispuesto no prejuzga los méritos de las reclamaciones ni la procedencia de las mismas.

### RESOLUCION

Por los fundamentos que anteceden, haciéndolos formar parte integrante de la presente resolución, declaramos No Ha Lugar, la solicitud de sentencia sumaria parcial presentada por Motorola. En su consecuencia, se ordena a las partes a continuar con las instancias del caso.

NOTIFÍQUESE.

DADA en Bayamón, Puerto Rico, hoy 15 de octubre de 2000.

TOMASINI GÓMEZ
Juez Superior

2728

SUPREMO    2767