IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Eliseo Rivera Cortés, Gloria Pillot, et al, <br><br> *Plaintiffs* <br><br> v. <br><br> Airport Catering Services, Corp., <br> Union Independiente de Trabajadores <br> de Aeropuertos <br><br> *Defendants* | Civil No. 98-2092(GG) <br><br><br> CIVIL ACTION |

**MOTION IN OPPOSITION TO GROUP "Y" COPLAINTIFFS' OBJECTIONS**

TO THE HONORABLE COURT:

Comes now Co-Defendant, Airport Catering Services Corp., hereinafter referred to as ACS, represented by its undersigned attorneys and very respectfully states and prays as follows:

**I.**

**INTRODUCTION**

On February 24, 2005, the Honorable Magistrate Judge Camille L. Vélez Rivé issued her "Report and Recommendation" (Docket No. 111) (hereinafter referred to as the "Report"), regarding the Motion for Summary Judgment (Docket No. 35) filed by the herewith appearing party on January 28, 2000.

On the Report, the Honorable Magistrate Judge recommended to this Honorable Court that the above-indicated summary judgment be granted in part and denied in part. In particular, the Honorable Magistrate Judge recommended that the Group Y plaintiffs' actions be "summarily dismissed for being precluded by their settlement/release agreement" since the clause requiring the signature of the Secretary of Labor of the Commonwealth of Puerto Rico

and the lack thereof did not void the agreement. Moreover, the Honorable Magistrate Judge recommended that ACS' request for summary judgment against Group N be denied.

After various requests for extensions of time, on March 28, 2005, Plaintiffs filed a motion titled *Group "Y" Coplaintiffs' Objections to U.S. Magistrate Judge Report and Recommendations* (Docket No. 116) (hereinafter referred to as the "Objections"). On said motion, Plaintiffs objected to the following recommendations made in the Report:

1. "That there is no controversy on the fulfillment of the contract requisites – consent, object and cause – in the agreements, except for the contested failure to contain the signature of the Secretary of Labor (page 5, Report and Recommendations)." See, Docket No. 116, p. 3.

2. "That when the clauses of the release agreements are read together, it becomes clear that the release agreement 'remain fully operational even though they lack the signature of the Secretary of Labor', which failure does not invalidate the release agreements. (p. 7 Report and Recommendations). Additionally, the report and recommendations state that Item 5 of the agreement requires the approval and signature of the Secretary of labor only as a condition for payment of the amounts therein stated, as a way to '… guarantee the payments to plaintiffs' (p. 8 Report and Recommendations), and that upon payment of said amounts, the agreements remain operational and functional (p. 9 Report and Recommendations)." See, Docket No. 116, p. 3.

As will be hereinafter discussed, Plaintiffs fail to present any evidence to support their allegations. Moreover, the evidence presented supports the contentions purported by the herewith appearing party.

## II.

## ARGUMENT

**A. Legal Standards Applicable to Objections to Reports and Recommendations issued by a Magistrate Judge.**

Rule 72(b) of the Fed.R.Civ.P. provides that a party may file specific, written objections to the proposed findings and recommendations of a magistrate judge. Likewise, Local Rule 72(d) states that "the written objection ... shall specifically identify the portion of the proposed ... recommendation or report to which an objection is made and the legal basis for such objections." The objections presented, however, are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge.  Specifically, in <u>Sackal v. Heckler</u>, 104 F.R.D. 401 (D.R.I. 1984) the court has established that, "[i]f the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." <u>Id.</u> at 402-403.  <u>See also</u>, <u>Betancourt v. Ace. Ins. Co. of Puerto Rico</u>, 313 F.Supp. 2d 32 (D.P.R. 2004).

**B.     Regarding Plaintiffs' first objection that there is controversy over the fulfillment of the contract requisites.**

As above indicated, Plaintiffs' first objection to the recommendations made in the Report is that the Honorable Magistrate Judge erred in determining that there was no controversy over the fulfillment of the contract requisites, that is, consent, object and cause.

Plaintiffs' only basis for said objections is the hollow and stereotyped allegation that "there is a genuine controversy on the issues of facts as to the true intent, motives, and reasons behind co-plaintiffs' signatures in the agreement, which may not be adjudicated summarily.

Plaintiffs' answers to interrogatories are eloquent on said controversy." See, Docket No. 116, p. 3.

Notwithstanding the above, the truth is that Plaintiffs answers to the interrogatories are in fact not eloquent with regards to the alleged true intent, motives, and reasons behind their signatures and that Plaintiffs **fail to present any evidence** to sustain their purported allegations. As discussed in ACS' Summary Judgment Motion, Plaintiffs have failed to establish, for all relevant legal purposes, any evidence to sustain their allegations. There is simply no evidence to contradict the fact that they signed the settlement agreements, with consent under the advice of the union, and received their compensation freely and knowingly.

In addition, the fact that Plaintiffs voluntarily withdrew their complaint against the Union, with prejudice (Docket # 50), party whom they alleged participated actively and coerced then into signing their individual settlement agreements (Docket # 22 ¶ 13-170), is in fact an admission of the lack of evidence from the part of Plaintiffs to demonstrate said allegations, and an admission that said acts of coercion did not actually occur. Moreover, it is indicative that Plaintiffs have resigned to any type of allegation of coercion from the part of the Union. Consequently, we must ask ourselves, ¿Why did Plaintiffs dismiss their claim against the Union? The clear answer to this was that they did not have any evidence to support their allegations against said entity. Therefore, if they had no evidence to support said allegations against the Union, the entity that was representing and providing legal advice to them, ¿how can they sustain these allegations against ACS?

In examining Plaintiffs' opposition to ACS' request for summary judgment it is evident that they lack any factual or legal allegations to maintain their claims alive, opting instead to raise smokescreens designed to attempt to confuse this Court. In fact, in page 4 of their *Opposition to Motion for Summary Judgment and Memorandum of Law in Support Thereof*

4

(hereinafter referred to as the "Opposition "), (Docket #44), for all practical matters, Plaintiffs in fact concede that the case should be dismissed, however for the first time they argue that they actually brought two separate claims, and one of them, they realize then, was allegedly not related to the alleged breach of fair representation:

> "**This argument would be dispositive of the case at bar if the only allegation was related to the breach of the duty of fair representation.** That is not the case. **Aside from plaintiffs' contention that the union failed its duty to represent them fairly and that the employer conspired with the union to that end,** we allege that the settlement agreement or contract between the union, the employer and the union members individually is null and void because it was conditioned to the approval of the secretary of labor, approval which is absent." P. 4 of Plaintiffs' "Opposition" (Docket # 44).

Based on the above, <u>it is evident that Plaintiffs have conceded to the fact that</u> <u>there was no breach of contract and that there were no hidden true intent, motives, and reasons behind their signature</u>. Evidently, if Plaintiffs have voluntarily sought and obtained a dismissal with prejudice of their allegation that the Union failed its duty to represent them fairly by advising them to sign the settlement agreement, the unavoidable conclusion is that they signed these documents with fair advice from the Union, that there was no conspiracy with the employer, and thus that the documents were signed voluntarily. Obviously ACS, as the opposing party, had no duty to advice Plaintiffs in the signing of the agreements - that was the Union's role as sole representatives of Plaintiffs - and it is therefore impossible to conclude that Plaintiffs were coerced or intimidated into signing the agreement. **The mere fact that Plaintiffs now have new counsel is simply no reason to allow a tardy and undue revival of allegations that have already been waived voluntarily and with prejudice.**

In addition to the fact that Plaintiffs have voluntarily conceded, with prejudice, that they were not coerced into signing the agreement, there is simply no evidence on the record to sustain the contention that there is a genuine controversy on the issue of facts regarding Plaintiffs' informed consent at the signing of the agreements. As indicated previously, Plaintiffs base their

5

objections on the assertion that there is ample evidence to support their allegations of intent on their answers to the interrogatories submitted as their Exhibit 1 to their Opposition. (Docket # 44).

However, a review of the answers to the vast majority of the interrogatories reveal that they are not responsive for the purposes of Rule 37(a)(3) of the Federal Rules of Civil Procedure. Plaintiffs' answers were vague and non-specific, responding in a very broad fashion without disclosing the requested information. For example, plaintiff Reynaldo Febo's answered some of his interrogatories in the following manner[1]:

8. When did you join the list of plaintiffs in this case?[2]
   A: Two (2) years after having signed.

9. Explain the circumstances in which you became aware that you could become a Plaintiff in this case, including the names of the persons who first informed you that you could become one and the date in which you were first informed.
   A: I ran into a co-worker of mine and he informed me of the meetings. His name was Mr. Cuadrado.

10. Describe how you were intimidated; by whom; and produce a list of those who were present when you were intimidated.
    **A: No.**

11. Describe how you were coerced; by whom; and produce a list of those who were present when you were coerced.
    A: They convinced me telling me it was my only option.

12. State all income you have received since January 1992, and provide copies of your income tax returns for the period above.
    A: I do not know. (See Exhibit1 Docket # 44)

---

[1] Although the answers to these interrogatories were included as the Exhibt 1 to Plaintiffs' Opposition, in order to expedite the proceedings ACS is including them to the herewith motion as Exhibit I.
[2] For argumentation purposes the interrogatories and the answers are combined.

Plaintiff Eliseo Rivera Cortés answers some of his interrogatories in the following manner (a review of these answers clearly establishes the fact that any alleged coercion was performed by the Union, an entity that is no longer a party to the present matter):

> 2. With regard[s] to paragraph four (4) of the Second Amended complaint, describe in detail: a) how you were misled into singing the "Defective Settlement Agreement", include any specific misleading statements; b) the reason why you believe that the settlement agreement was "defective"; c) the persons who misled you; d) the date(s) and hour(s) when the acts described as "misleading" took place; identifying for each act, the person who committed it; e) the persons who were present when the act described as "misleading" took place; f) the place(s) where the act(s) identified as misleading took place.
>
> a) They would say to us that if we did not sign that document, we would receive nothing, they would also use foul language in order to intimidate us. **(They refer to the Union representatives).** (See Exhibit 1 Docket # 44)
>
> 3. How did you become aware that you had been misled into signing the agreement?
> A: Because the Union was no longer giving us information on the case, this lead me to take my own investigation at the federal secretary offices. And through my investigation I discovered that the case was going well but that it was very strong case. There was no reason for them to say that the case was not going well.
>
> 4. When and where did you become aware that you had been misled into signing the agreement?
> A: I knew I was being mislead at all times, the only reason I signed the document was because of their threats; which consisted of them reporting me to "Hacienda", because I was not actively contributing to the government. (See Exhibit 1 Docket # 44)

Besides the non-responsiveness of Plaintiffs' answers, some of them provided answers that do not correspond to the interrogatories submitted, giving the impression that the answers were prepared using the interrogatory of another plaintiff. A vivid example of this is plaintiff Gudelia Ramos' answers. Question number two (2) of the interrogatory read:

> 2. With regard[s] to paragraph four (4) of the Second Amended complaint, describe in detail: a) how you were misled into singing the "Defective Settlement Agreement", include any specific misleading statements; b) the reason why you believe that the settlement agreement was "defective"; c) the persons who misled you; d) the date(s) and hour(s) when

7

the acts described as "misleading" took place; identifying for each act, the person who committed it; e) the persons who were present when the act described as "misleading" took place; f) the place(s) where the act(s) identified as misleading took place.

Plaintiff's answer was:

> 2. a) I have knowledge of a document signed by my co-workers to receive "X" amount of money.
> b) I heard this offer through my co-workers and by going to the meeting held by the Union. (See Exhibit 1 Docket # 44)

The above example clearly reveals that many of the plaintiffs did not even read their interrogatories in order to provide their answers.[3]

It has been held consistently that the inability to produce during discovery sufficient evidence to withstand a directed verdict motion at trial constitutes grounds for the granting of summary judgment. In **June Kunz v. United Food & Commercial Workers, Local 876**, 5 F. 3d 1006 (6th Cir. 1993), a case that also dealt with a hybrid §301 claim, the Court of Appeals for the Sixth Circuit asserted the following :

> "A party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the Liberty Lobby criteria, summary judgment is appropriate". See also **Street v. J.C. Bradford & Co.**, 886 F. 2d 1472, 1478 (6th Cir. 1989), **Celotex Corp.. v. Cartrett**, 447 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986), and **Anderson v Liberty Lobby, Inc**., 477 US 242 (1986).

---

[3] The answers provided by Plaintiffs also suffer from another defect: they were not sworn as required by Rule 33(b)(1). Said rule provides:

> **Each interrogatory shall be answered separately and fully in writing *under oath***, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable. (Emphasis added)

Most answers are not sworn before duly authorized official, nor were they signed by their legal representation certifying truth and correctness of their statements. They only certified their answers "under penalty of perjury". Said statement does not guarantee the truth and correctness of their answers. (See Exhibits 1 Docket # 44)

This same principle applies to the case at bar. Plaintiffs have not provided one scintilla of evidence to support their claims, on the contrary, all that they have done is present unbiased, unsworn and stereotyped allegations that they where "misled and/or intimidated and/or coerced". Consequently, since Plaintiffs' have failed to present any evidence required to adequately oppose and/or controvert the issues of fact established in ACS' Motion for Summary Judgment, the recommendations made by the Honorable Magistrate Judge regarding the lack of controversy over the fulfillment of the contract requisites should be adopted by this Honorable Court.

**B.     Regarding Plaintiffs' second objection that the settlement agreements never became valid due to the absence of the approval and/or signature of the Puerto Rico's Secretary of Labor.**

As above indicated, Plaintiffs' second objection to the recommendations made in the Report is that the Honorable Magistrate Judge erred in determining that the Secretary of Labor's approval and signature of the settlement agreements was not a necessary and required prerequisite to their validity.

Plaintiffs' basis for said objections is the following:

> "To comply with the rulemaking delegation of powers granted to the Secretary of Labor in Sec. 13 of Law No. 379 (supra), the Secretary of Labor approved a regulation governing the approval of settlement, Regulation No. 3060 of December 5, 1983 (Exhibit 1), which was in effect at the time the agreements were signed by all required persons except the Secretary of Labor, and it fixes the administrative procedures required by the Secretary to approve settlements, including releases. The need to follow its terms was considered with approval by the Supreme Court of Puerto Rico in the Opinion of September 30, 2002, 2002 T.S.P.R. 131, in the case of **Benitez Esquilín, et al v. Johnson and Johnson C.P.I.**
> Since in the agreements co-plaintiffs were settling their claims and rights to collect wages and salaries from A.C.S., without the approval of the Secretary of Labor no validity attained to said pretended contracts of settlement. See P.R. Glass Corp. v. Tribunal Superior, 103 D.P.R. 223 (1975), in which Art. 13 of Law 379 (supra) and Art. 1709 et seq pf the C.C.P.R. on the Settlement Contract (31 L.P.R.A. 4821 et seq), were considered. With respect to waivers of rights such as those referred to in the agreements, when associated with a settlement, the waiver is limited to those pertinent to the settled dispute. See Art. 1714 of the C.C.P.R. (31 LPRA 4826). In the case of Arce Burcetta, et al v. Motorola Electrónica de

9

<u>P.R.m, Inc.,</u> Civil No. DPE98-0117, the Superior Court of Bayamón (Exhibit 2) sustained the illegality of the execution of releases of waiver of labor rights by employees without the approval of the Secretary of Labor, including the right to claim salaries, wages and overtime compensations, which was affirmed by judgment of the Circuit Court of Appeals, KLCE0001392, Resolution of May 30, 2003." <u>See</u>, Docket No. 116, pp. 6-7.

As discussed in ACS' Motion for Summary Judgment, approval from the Department of Labor is not a necessary condition for the validity of a settlement agreement between en employee and its employer regarding **reinstallation and back pay**. This allegation by Plaintiffs stems from the fact that the stipulation and releases entered by the parties in transaction of cases A-2657 and A-1840 contained a space provided for the signature and approval of the Puerto Rico Secretary of Labor. The signature of the Secretary of Labor is usually included as boilerplate language in waivers and stipulations that deal with employment terminations. This is usually done in an attempt to provide some sort of safeguard that may be used by employers to defend themselves from claimants who have settled all causes of action against the employer, but who later decide to sue for alleged salaries owed for time worked during regular hours (minimum wage), overtime and/or mealtime **worked** and not compensated.

Moreover, the mere fact that such space was provided but not actually signed by the Secretary of Labor does not affect the validity of the agreements of the parties with regards to their voluntary waiver of the remedies of the arbitration award. In addition, the fact that the settlement agreements only required said signature as a **<u>condition of payment and not a condition of validity</u>**, supports ACS' position that said approval was not a necessary prerequisite for their validity. Consequently, all that this means is that ACS "jumped the gun" in the payment of the checks, since it did not wait for the signature of the Secretary of Labor.

In regards to the Working Hours and Days Act of Puerto Rico, Act No. 379 of May 15th 1948, as amended, and the former Minimum Wage Law, Act No. 96 of June 26, 1956, as amended, as discussed on ACS' dispositive motions, these are the only statutes which require

10

approval from the Puerto Rico Department of Labor and Human Resources for the settlement of claims arising under its provisions.  Nevertheless, these Acts deal exclusively with minimum wages, working hours, overtime and mealtime compensation **for time worked but not satisfied**.

Specifically, the Act states in 29 LPRA §282 that an employee may bring suit against his/her employer for overtime and mealtime claims arising under the Act; and that once a claim of such nature is filed in court, a transaction may be made with the intervention of the Puerto Rico Secretary of Labor or any of its attorneys.  In addition to the above, section 282 specifically provides that any settlement *regarding working hours, overtime and mealtime hours* will be null and void, unless it has been verified by the Puerto Rico Secretary of Labor.  This is clearly not the controversy that was entered into in the arbitration award.

The remedies that the "Y" Plaintiffs (those who signed the settlement agreement) were giving up in exchange for the monetary amount specified in the release arose exclusively from the arbitration award in cases A-2657 and A-1840.  Therefore, the back pay to which they would have been entitled had they not signed the stipulation would not include any compensation for time actually worked, but merely for the time they would have worked had they been reinstated when service operations to American Air Lines were normalized. Cases A-2657 and A-1840 did not deal with overtime and or mealtime wages, and it was therefore legally unnecessary for the stipulation to bear the signature of the Secretary of Labor in order to guarantee its validity.

Notwithstanding the above, in their Objection Plaintiffs aver that the Secretary of Labor's signature was a necessary prerequisite for the validity of the settlement agreements.  In support of this contention, they cite Regulation No. 3060 of December 5, 1983 adopted by the Secretary of Labor, and the case of <u>Arce Burcetta, et al v. Motorola Electrónica de P.R.m, Inc.,</u> Civil No. DPE98-0117, held before the Puerto Rico Court of First Instance, Bayamón Part.

A review of the above Regulation and case clearly supports ACS' contention for summary judgment. Both of the above-referred legal documents clearly establish the necessity for the Secretary of Labor's signature only in those transactions related to working hours, overtime and mealtime compensation for time worked but not satisfied. As clearly discussed, this is not the case at hand. The captioned case clearly has to do only with back pay to which Plaintiffs' would have been entitled had they not signed the stipulation. This case **has nothing to do with** any compensation for time actually worked, but merely for the time Plaintiffs would have worked had they been reinstated. Therefore, since there was no applicable law requiring the Secretary of Labor's signature for the validity of waivers involving reinstatement and back-pay, there was no legal obligation for the parties to submit an agreement like the one at bar to the approval of the Secretary of Labor, as is erroneously contested by Plaintiffs.

Consequently, based on the above discussion, the recommendations made by the Honorable Magistrate Judge regarding the unnecessary approval and/or signature of the Secretary of Labor for the validity of the settlement agreements, should be adopted by this Honorable Court.

**C.   Plaintiffs' have failed to comply with the procedural requirements of Objections**

A review of Plaintiffs' Objections clearly demonstrate that they are simply restatements of the arguments that the Honorable Magistrate Judge considered. Consequently, Plaintiffs failed to comply with the procedural requirements for Objections. They have failed to **provide specific and direct objections** to the findings made by the Magistrate. Therefore, this Court cannot take these into consideration.

In light of this hurdle, this Honorable Court may not even consider Plaintiffs' objections, and may not review *de novo* the Report and Recommendation without the benefit of any new

argument of substance. See, Castro-Rivera v. Citibank, 195 F.Supp. 363, 365 (D.P.R. 2002) (where the court found that plaintiffs simply restated the arguments that the Magistrate Judge had already considered, and thus cannot expect the Court to treat their filing seriously). Furthermore in, Monfort-Rodríguez v. Hernández, 286 F.Supp.2d 119, 121 (D.P.R. 2003), it was found that plaintiff's objections were simply restatements of the arguments that the Magistrate Judge had already considered, and that they "offered nothing to bolster their objections except their own interpretation of the evidence."

WHEREFORE, it is respectfully requested from this Honorable Court to deny Plaintiffs' Objections and adopt Magistrate Judge Velez's report and recommendation.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 1st day of April, 2005.

I HEREBY CERTIFY that on April 1, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Luis R. Mellado-González, Esq.; José Carreras, Esq.; and Nereida Feliciano Ramos, Esq.

s/ Fernando A. Baerga-Ibáñez
Fernando A. Baerga-Ibáñez
 USDC PR No. 213311
s/ Alberto R. Estrella Arteaga
Alberto R. Estrella Arteaga
USDC PR No. 217606
Curbelo, Baerga & Quintana Law Office
Union Plaza Bldg. Suite 810
Ponce de León Avenue 416
San Juan, PR 00918-3426
Tel. (787) 753-7455
Fax. (787) 756-5796
curbelobaerga@microjuris.com