United States District Court
For the District of Puerto Rico

*Certified Translation*

EXHIBIT 2

— CERTIFIED —

To be a correct translation prepared by:

*Annie Flores*

**COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
BAYAMON SUPERIOR COURT**

Certified Court Interpreter
Administrative Office of the
United States Courts

JOSEFA ARCE BUCETTA ET AL

**PLAINTIFFS**

**Vs**

MOTOROLA DE PUERTO RICO, INC.

**DEFENDANTS**

CIVIL NO.: D PE98-0117 (505)

RE: CIVIL ACTION

### DECISION AND ORDER

The motions of the above-captioned parties are before our consideration, in relation to the request for partial summary judgment filed by Motorola Electrónica de Puerto Rico, Inc. ("Motorola"), in which it requests the dismissal of the complaint against 194 of the 227 plaintiffs[1].  In synthesis, it alleged that the latter lack cause of action inasmuch as when the work relationship with Motorola ended, they signed a settlement contract and general release (hereinafter "release"); that with the intervention of employees from the Department of Labor (hereinafter "Department") they were released from any claim they may have had against the latter and, in consideration of this, each one was paid a sum of money, calculated on the basis of years of service.

---

[1] The motion for summary judgment was filed on January 3, 2000.  It accompanied with its motion the following documentary evidence:  Attachment A, Attachment B-1 up to Attachment B-178, and Attachment C-1 and Attachment C-2.

On February 8, 2000, Josefa Arce Bucetta and others (hereinafter the "Plaintiffs") filed their motion in opposition to the request for summary judgment[2]. They adduced that representatives of Motorola announced the closing of the plant and, in order for the employees to remain in their positions, certain employees were offered severance pay; that the same was granted for the purpose of achieving an orderly and gradual closing of operations; that some of the plaintiffs signed the adhesion contract which included waiver of rights clauses or releases as a condition for receiving the payment of an "improved stipend" offered by Motorola.

Furthermore, they adduced that, at some point before signing the document, a representative of the Department appeared and met with them as a group. He allegedly advised them and signed the document. The same included the word "approved" and in some documents the word was substituted for the word "advised". In addition, he indicated that at the time of the signing of the documents they had not claimed from the employer what they were claiming in the complaint.

The party also argued that the settlement contract was not perfected, but rather, what the employer tried to obtain was an illegal waiver and without cause for the employees of other rights and claims unrelated to the closing of operations; that the general waivers of rights extend solely to rights related to the controversies; that the case is not about a voidable contract, but rather, about the nonexistence of a contractual cause; that the releases and waivers are null and;

---

[2] Plaintiff did not present documents with its motion. Instead, it requested time to file "sworn counterstatements".

that the fact that the employees of the Department of Labor have advised the Motorola employees does not imply that the Secretary of Labor approved the release agreements.

On February 22, 2000, Motorola filed a reply to plaintiffs' opposition. It adduced that the case was not about dismissals, but rather, voluntary dismissals; that at the time of the signing of the document between the parties, an uncertain legal relationship and contractual cause existed; that in the document all claims related to their employees and the termination of same were settled; the rights granted in Law 379, supra, can be settled out of court, as long as the contract is verified before the attorneys of the Department of Labor.

On March 10, 2000, plaintiff filed a document titled "Plaintiffs' Motion against the Request for Summary Judgment and Plaintiffs' Rejoinder[3]. In synthesis, they alleged that the settlement contract was not perfected between the parties; that the releases are null because they are contrary to law; that the real intention of the employer was not to settle wage claims, but rather, to insure a gradual and orderly closing of operations of the plant; the plaintiffs did not receive anything in exchange for the potential claims.

On March 27, 2000, Motorola filed another motion and, among other things, it argued that the motion was tardy and insufficient; that pursuant to the non-disputed facts, it is proper to grant the remedy requested; that the evidence that accompanies the rejoinder filed by the three plaintiffs is inadmissible; that the contract clearly provides that, in consideration for the payment of money received, it offered Motorola the most complete release from responsibility and

---

[3] They accompanied with the motion a sworn statement subscribed by three of the plaintiffs.

waiver of right on behalf of Motorola. In addition, it reiterated itself in its contention that the contract was valid.

The action before us began when, on February 11, 1998, 227[4] plaintiffs filed with the Court the complaint as a claim for the following: (1) hours worked during eating periods; (2) hours worked on the seventh day; (3) unable to have the benefit of vacation according to the mandatory decree; (4) overtime owed to the employees of the second and third shift; (5) vacation insufficiently paid at a salary rate less than the corresponding one. The allegations of the complaint make reference to "temporary employees" and/or "permanent employees".

The plaintiffs initially filed the action as a class action. They alleged they represented a class of 1200 employees and ex-employees of Motorola. By means of a decision and order entered on July 23, 1998, the Court denied the petition for certification of the class, for which reason the action was processed individually for each one of the plaintiffs.

## DECISION AND ORDER

After analyzing the allegations of the complaint, the motions, and their attachments, we conclude that the following facts are not in controversy:

1. Motorola Electrónica de Puerto Rico is a corporation organized under the laws of the State of Delaware and operated a communication equipment manufacturing plant in the Municipality of Vega Baja, Puerto Rico.

---

[4] A request by plaintiff to get the Court to authorize the amendment to the complaint to include 115 additional plaintiffs in the lawsuit is pending decision. Said motion will be considered after disposing of the request for summary judgment before us.

2. The plaintiffs are former employees of Motorola and/or their predecessors and they held different positions in the employer's plant until 1998, year in which the defendant ceased operations.

3. In view of the closing of the operations of the plant, Motorola established a voluntary separation program of its employees and another one of involuntary separation. In order to be a participant and receive the benefits of the program, every employee had to sign a "General Agreement and Release from Claims against Motorola" form and not revoke it after the seven days following the day of the signature. At the moment of separation from employment, some of the plaintiffs signed the documents prepared by Motorola.

4. In the document the workers release the employer from any responsibility and waive all rights or cause of action known or unknown, related to the employee's relationship or his termination with respect to the protective laws of the workers that were specifically pointed out in the document, including the causes of action by virtue of which the claim at bar was filed.

5. Plaintiffs received an orientation by some employees from the Department of Labor and Human Resources of the Commonwealth of Puerto Rico on the provisions of the contract that the plaintiffs had to sign in order to receive the benefits plan because of termination from employment.

6. The Agreement and Release document in subsection 12 indicated the following:

"The employee acknowledges and assures that: (a) he has signed this Release freely and voluntarily, and no statement made by the Company has unduly coerced or influenced him to sign this Release; (b) he understands the legal consequences of signing this Release, which include that with his signature

5

on this document he waives every cause of action or claim against the Company that he knew or could know as of this date; (c) he has had the opportunity of consulting with an attorney before signing this Release; (d) he has had a reasonable period of time to consider this Release; (e) he has not relied on any promise, statement or representation whatsoever made by the Company in relation to this Release which is not expressly included in this document or in the Program."

7. At the end of all the documents titled "General Release" and General

Agreement and Release" there appears a paragraph which reads as follows:

"Approved

I,_____, on behalf of the Secretary of Labor and Human Resources of Puerto Rico, sign this Release today_____, 1998, in order to assert that I have read the foregoing document and I have informed the Employee about the legal effects and consequences of each one of the clauses. I have likewise advised the latter about the rights and obligations under the protective legislation of the worker.

_____
Signature"

8. Said paragraphs were completed by Mrs. Lucila M. Vázquez Inigo or

Mr. Domingo E. Chacón de Pena, both, employees of the Department of Labor.

9. In a great number of the documents, the word "approved" was crossed

out and substituted for the handwritten word "advised".

10. In consideration of the signature of the Agreement by the Plaintiffs,

Motorola paid them a sum of money as a special severance pay, calculated

bearing in mind the years of service of the latter.

11. When the employees signed the documents, the latter had no  claim

whatsoever being processed before any of the Offices of the Rules Division of

the Department of Labor and Human Resources related to the amounts claimed

in the case at bar.

12. The motions that the employees signed were not approved by the Secretary of the Department of Labor nor by any representative designated by him to that effect as settlement.

### DISCUSSION

Rule 36 of the Rules of Civil Procedure of Puerto Rico allows the parties of a lawsuit to file a motion based, or not, on sworn statements, so that a summary judgment may be entered in their favor. *Castro Soto v. Caribe Hilton,* 137 D.P.R. 294 (1994). The purpose of this rule is to expedite the processing of a case, since it allows judgment to be entered without the need to hold a hearing on its merits, provided that it always appear from the non-contested documents that accompany the request, that there is no substantial controversy regarding the material facts, and that it is proper as a question of law to enter summary judgment. *Sotomayor v. American International Insurance Co.,* 137 D.P.R. 356 (1994); *Pilot Life Insurance Co. v. Crespo,* 137 D.P.R. 624 (1994).

Case law has repeatedly held that the mechanism of summary judgments is not advisable when there are subjective elements of intention, mental purposes, negligence, or when the credibility factor is essential in order to decide the case. *Col. de Ingenieros v. AAA,* 131 D.P.R. 735 (1992).

In view of what was previously indicated, and by virtue of the motions filed by both parties, it is our duty to decide if, at this stage of the process, there is any substantial controversy on material facts that prevents us from entering judgment summarily with respect to the claim before our consideration.

The action before us is related to an alleged contractual relation. It is alleged that some of the plaintiffs waived any possibility of a cause of action against Motorola through a settlement contract. Therefore, we must review some principles that deprive in the matter.

Agreements between contracting parties have the force of law and must be complied with pursuant to the same, Art. 1044 of the Civil Code, 31 L.P.R.A. sec. 2994. The contracting parties can establish the agreements, the clauses, and the conditions that they consider convenient, <u>as long as they are not contrary to law, morals and public order.</u> Art. 1207 of the Civil Code, 31 L.P.R.A. sec 3372. (Emphasis added)

If the terms of the contract are clear and leave no doubt about the intention of the parties, the literal sense of its clauses shall govern. The Courts of Law cannot dispense a party in a legal, valid contract and that does not have any defect whatsoever from complying with what it bound itself to do. *Cervecería Corona v. Commonwealth Ins. Co.,* 115 D.P.R. 345 (1984). *Constructora Bauzá, Inc. v. García López,* 129 D.P.R. 579 (1991).

Notwithstanding, Article 4 of the Civil Code 31 L.P.R.A. sec. 4 provides that:

"...The rights granted by the laws are waivable, unless this waiver is against the law, public order or interest, or to the detriment of a third party."

Likewise, Article 20 of the Civil Code 31 L.P.R.A. sec. 20 provides:

"When laws, to prevent or for reasons of public utility, declare certain acts null, their provisions should not be dispensed or unfulfilled because it has been proved that in the particular question involved there has been no fraud or it is not contrary to public utility."

In our code of laws the clause in a contract that has been entered into in violation of a legal prescription or prohibition, founded on motives of public order, can be considered null.  See *Corporación Azucarera v. Junta Azucarera*, 77 D.P.R. 397 (1954).  That is why we must determine whether in our jurisdiction the workers, as a condition in a settlement contract and/or termination of employment, can validly waive the rights granted by Law 379, supra, under the pallium of which it is claimed in this action.

Article 1709 of the Civil Code 31 L.P.R.A. sec. 4821 defines settlement as:

"a contract through which the parties are giving, promising, or keeping, each one some thing, prevents the provocation of a lawsuit or puts an end to the one they had commenced."

Professor Vélez Torres, when commenting on said article, states that for the birth of a contract, the following conditions must be present:  (1) uncertainty of the parties concerning the extension of rights and limitations resulting from a specific legal relation and, as a consequence thereof; (2) substitution of the uncertainty for a new relation, certain and indisputable; (3) reciprocal concessions of the parties.  See: Vélez Torres, Curso de Derecho Civil, Derechos de Contratos, [Civil Law Course, Contract Law] Legal Journal U.I.A., Volume IV, Vol. II, 1990, pages 495 et seq.; *Citibank, N.A. v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503 (1994).

Like in all contracts, the elements of consent, object, and cause have to concur for its perfection.  In the case of settlement contracts, the subject of the contract is the uncertain legal relation or the differences which originated between the parties and the cause is  the elimination of the controversy to which

the contract refers.  See Vélez Torres, J.R., Curso de Derecho Civil, Derecho de

Contratos, supra; Rivera Rivera, Luis R., El contrato de transacción, sus efectos

in situaciones de solidaridad [The settlement contract, its effects in situations of

solidarity], Jurídicas Editores, San Juan, PR, 1998.

In the case of Citibank v. Dependable Insurance Co. 121 D.P.R. 503, 512-

513 (1988), our Honorable Supreme Court provided the following with respect to

the essential requirements of the settlement contract:

> "FIRST, an uncertain legal relation must exist, that is, 'contrary
> presumptions, motivated by legal uncertainty, be it because the possible right of
> the parties is uncertain, objectively doubtful, or because the former consider that,
> in their opinion, there is uncertainty, although in reality there is none'.  SECOND,
> the intention of eliminating the uncertainty must be present.  The intention of the
> parties is to be to substitute the 'doubtful relation for one that is certain for them
> and unanswerable'.  LASTLY, reciprocal concessions must be made, this is the
> element that gives the settlement the nature of a bilateral contract.  The
> settlement end 'is achieved only by the parties sacrificing their presumptions in
> the controversy, but in no way forces those reciprocal concessions to be perfectly
> equivalent…these economic sacrifices may be of a moral order or have an
> economic content and are to be reciprocal because in another case there would
> be a mere waiver."

On the other hand, regarding the waiver of rights, the second paragraph of

Article 1714 of the Civil Code, 31 L.P.R.A. sec 4826  provides :

> "…The general waiver of rights is understood only as to those who have
> something to do with the dispute on which the settlement has fallen."

The purpose of the article is to determine the scope of the settlement or

the limits of its object.  Its foundation lies in the fact that because of its nature the

litis or controversy is determined out of court, the settlement necessarily has to

have said nature, even though it has been put into effect in general terms and,

for said reason, it is considered general.  See Manresa, José D., Comentarios al

10

Código Civil Espanol [Comments on the Spanish Civil Code], T. XII, 6th ed.,
Reus, Madrid, 1973, page 160. Therefore, the scope of the contract does not
extend to the unknown or ignored, but rather, only restrictively to the points that
were the subject of discussion in the dispute.

In part, the claim before us finds one of its grounds in Article II Section 16
of the Constitution of the Commonwealth of Puerto Rico which provides:

**"The right of every worker to…an ordinary work day not to exceed
eight hours of work is recognized. A worker may work in excess of this
daily limit only by means of extraordinary compensation, which will never
be less than one and a half times the rate of the ordinary wages, as
provided by law."**

Said section was the means through which the Puerto Rican worker could
be offered a stable social protection elevating the guarantee relative to the eight
hour work day to the constitutional rank. In this way, through constitutional
mandate, protection is offered to the health, safety, and life of the workers by
means of the elimination of conditions of exploitation of the worker on the basis
of excessive work days. *Almodóvar v. Margo Farms del Caribe,* 99 J.T.S. 62 Op.
of April 14, 1999.

The Puerto Rico Hours and Days of Work Act, Law 379 of May 15, 1948,
29 L.P.R.A. sec 271 et seq. (hereinafter "Law 379"), embodies the constitutional
mandate of the payment of overtime. Said law establishes concretely what is
relative to the work day and the payment of overtime.

In relation to the right of workers to the payment of overtime, Article 12 of
the Hours Act, supra, declares "the additional compensation cannot be waived on
the basis of the double rate of wages that sections 271 to 288 of this title fix for

overtime hours." The following paragraph provides that "every clause or stipulation by virtue of which the employee agrees to waive the payment of the additional compensation for overtime that sections 271 to 288 of this title fix shall be null."

The text of Law 379, supra, that was quoted gathers the guiding principle as to the unwaivability of the rights established in the legislation on the payment of overtime. Just as it is provided, the general rule in our jurisdiction is that employees cannot, by means of contracting, waive the benefits that said statute establishes.

Motorola adduces that Article 13 of Law 379 supra, authorizes workers to settle out of court, provided the contract is verified before the Department of Labor. The cited article provides in this regard:

"…All out of court settlements regarding the payment of wages corresponding to regular hours, overtime hours of work, the period indicated for eating meals, or regarding the payment of the sum equal to the one claimed fixed by this chapter for the liquidation of damages shall be null; Provided, however, that all settlements verified before the Secretary of Labor and Human Resources, or before any of the attorneys or officials of the Department of Labor and Human Resources designated by said Secretary, shall be valid for the purposes of this law." (Emphasis added)

Said provision establishes the conditions and terms under which the claim the employee may have can be settled. Claims may be validly settled only through the intervention of the Secretary of Labor, his attorneys, or those officials specifically designated by the latter to approve judicial or extrajudicial settlements which are carried out before the Rules Division or in any of the area offices by

mutual agreement, to the satisfaction and for the benefit of the employee and the employer.

Likewise, plaintiffs claim payment for annual leave in accordance with Mandatory Decree No. 81 promulgated for the metal industry, electrical products, by the Minimum Wage Board. Said Decree provides in this regard:

> **"Any contract through which the employee in fact waives, for money or otherwise, the enjoyment of his vacation, shall be illegal and null, unless there is permission from the Secretary or any agent authorized by him to allow any employee to waive, for money, the benefit of his vacation."**

The right to vacation consists in having the benefit and payment of the same. The latter cannot be segmented unless through previous mutual agreement between the employer and the employee, and not for more than two periods. The right to vacation is an unwaivable one for which reason days accumulated in excess of the two years shall be liquidated at the corresponding double rate. *Hernández vs. Espinosa,* 98 J.T.S. 41, Op. of April 3, 1998.

In view of the legal grounds set forth, we must evaluate submissions relative to the settlement contract and the validity of the waiver of rights contained in the documents signed by various plaintiffs.

The defendant adduces that the document subscribed by the employees constituted a valid settlement contract by means of which the employees released Motorola from all employee claims in its work relationship with the latter. This is not right.

After evaluating the totality of the circumstances regarding which there are no factual controversies, we conclude that the employees did not settle the

13

claims raised in the case at bar, and that clause seven (7) of the Agreement and Release document subscribed by some of the plaintiffs, constitutes an illegal waiver of rights for which reason they should be considered as not having been raised. Let us see.

In the first place, there is no controversy between the parties in the sense that on the date that the employees met with the personnel from the Department of Labor no claim was being processed administratively before the Office of the Rules Division of the Department of Labor and Human Resources for unpaid amounts, pursuant to Law 379, supra, and Mandatory Decree No. 81, supra. Neither were there any demands nor contradictory presumptions between the parties. Therefore, we consider that a settlement contract was not perfected at least as to the causes of action brought in the lawsuit before us.

The documents that Motorola has filed as defense against plaintiffs, only constitute an invitation to waive the rights that the law grants for the benefit of the workers. Nowhere in these documents are you able to deduce that there is a controversy as to the rights of the employees for benefits not earned by the latter. The legal validity of such a waiver must be evaluated in the light of the special protective legislation of the workers and the general principles that are reported in our jurisdiction as regards waiver of rights.

As we pointed out before, labor legislation establishes the general rule that rights granted in such legal provisions cannot be waived, except in exceptional circumstances and after complying with what is prescribed by the special laws to that effect. It is imperative to assure the protection that the

legislator wanted to give the workers and avoid non-compliance with said intention.

There is no controversy as to Motorola's not having requested from the Secretary of the Department of Labor permission to vary the working conditions established for the electrical devices manufacturing industry. Therefore, the working conditions that governed the Motorola employees were what was provided in mandatory decree 81, supra, and Law 379, supra.

The position of Motorola is that the waiver of rights is valid inasmuch as in the process in which the employment relationship ended, employees of the Department of Labor participated, for which reason what is provided in Law 379, supra, was complied with. We do not concur with said argument. Just as we indicated before, the document subscribed by the workers does not constitute, properly speaking, a settlement of the causes of action claimed in the action at bar. Notwithstanding, even when, for purposes of this discussion, we consider that the motion had the vocation of a settlement agreement, we conclude that the same is not valid since it was not done pursuant to the mandate of Law 379, supra, as to the approval required by the Secretary of the Department of Labor.

After evaluating the history of the case law, we conclude that said provision does not refer to any intervention of members of the Department of Labor, but rather, that the legislator contemplated an active participation of the Secretary, or his designated representative, to approve said settlement with respect to each one of the workers, after evaluating the conditions and circumstances in the work relationship of each one with the employer.

In this case there is no doubt that, at the moment in which the employees signed said agreements, there was no complaint or administrative proceeding before the Department by the workers for reason of the benefits granted by the protective Labor law. The participation of the representatives of the Department of Labor was limited to offering the employees advice about the content of the documents to be subscribed by the employees; the officials of the Department of Labor did not give their approval to the document that contained the waiver of rights in controversy, irrespective of whether or not the latter had the authority in law to give approval to the settlement agreements that are submitted before the Department. Therefore, we are forced to conclude that the alleged settlement was not approved by the Secretary of the Department of Labor or his representative, nor consequently, carried out pursuant to what is provided in Article 14 of Law 379, supra.

As additional grounds to deny the summary dismissal of the claims, we must mention that the right to additional pay for vacation period the employee did not have the benefit of is unwaivable. Said item cannot be contractually dispensed by the parties, unless there is a previous special permit of the Department of Labor to that effect. Therefore, that part of the document that sets forth the waiver of the right to additional pay for vacation the employee did not have the benefit of is also null and must be considered as not raised.

Wherefore, we must conclude, as a question of law, that in the case at bar a settlement contract with respect to the claims before our consideration was not drawn up. Because the waiver of rights that Motorola is seeking is not legally

valid, there is no legal impediment for the employees to bring the instant claim.
What is provided herein does not prejudge the merits of the claims nor the legal
basis of the same.

## DECISION AND ORDER

For the preceding grounds, and after making them form an integral part of
this decision and order, we DENY the request for partial summary judgment filed
by Motorola. Accordingly, the parties are ordered to continue with the
proceedings of the case.

TO BE NOTIFIED.

ISSUED in Bayamón, Puerto Rico, on this 15th day of October, 2000.


/s/
JEANNETTE TOMASINI GOMEZ
Superior Court Judge

[Partially legible seal of the
General Court of Law]


United States District Court
For the District of Puerto Rico

— CERTIFIED —

To be a correct translation prepared by:

_Annie Flores_

Certified Court Interpreter
Administrative Office of the
United States Courts

17